Docket No. 103972.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
VERNON ROSS, Appellee.

*Opinion filed June 5, 2008.*

JUSTICE FITZGERALD delivered the judgment of the court,
with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The central issue in this case is what remedy exists for a post-
conviction petitioner whose trial attorney failed to file a notice of
direct appeal. The State appeals the decision of the appellate court,
affirming the circuit court of Cook County's order allowing petitioner
Vernon Ross to file a late notice of appeal. No. 1–05–2806
(unpublished order under Supreme Court Rule 23). For the reasons
that follow, we affirm.

### BACKGROUND

On January 18, 1999, just before midnight, Doyinsola
Odumuyiwa was walking to his home on Chicago's north side.
Concerned about his safety, Odumuyiwa began walking down the

middle of the street, when he noticed another man walking in the opposite direction. As they passed, the man abruptly changed direction and began following Odumuyiwa. At an intersection, the man reached Odumuyiwa and spoke to him. Odumuyiwa did not respond and kept walking. The man crossed to the sidewalk on the right side of the street, and as Odumuyiwa proceeded to the sidewalk on the left side, the man called out, "Come here." When Odumuyiwa turned around, he saw the man pointing a small gun at him.

Odumuyiwa approached, stopping less than five feet from the man. The man pointed the gun at his chest and demanded his wallet; Odumuyiwa complied. The man took the wallet and asked Odumuyiwa if he had any money. Odumuyiwa said that he had only one dollar and a credit card. After two minutes, the man told him that he was free to leave. Odumuyiwa ran away and at the next street immediately encountered a car occupied by plainclothes police officers. The police officers drove Odumuyiwa back to the scene of the robbery and, moments later, found the petitioner, whom Odumuyiwa identified as his assailant. As the police officers neared the petitioner, he threw some items into a bush, where an officer retrieved Odumuyiwa's wallet and a pellet gun, which Odumuyiwa identified as the one used in the robbery.

The petitioner was arrested and indicted for armed robbery. At the petitioner's bench trial, Odumuyiwa, the police officer who recovered the gun, and the petitioner all testified. Odumuyiwa stated that the petitioner pointed "a black, very portable gun" at him, adding the gun was "small" and "something you can conceal." The police officer stated that the gun was a "4.5 BB caliber gun with a three inch barrel." The State did not offer the gun itself into evidence, but the inventory sheet lists a "MARKSMAN PLAINSMAN *** 4.5 BB CAL. PELLET GUN 3 INCH BARREL BLACK IN COLOR," but does not mention any pellets. The petitioner was convicted and sentenced to eight years' imprisonment. He filed a posttrial motion, arguing that the State failed to prove beyond a reasonable doubt that the gun was a dangerous weapon. The trial court denied this motion, stating:

> "[T]he testimony in the record was that the victim was in fear of his life when he observed what he thought to be a small gun that could be easily concealed. The officers recovered the

> gun. The victim observed the gun. Everything in the record suggested to this Court that the victim clearly believed it to be a dangerous weapon."

There was no direct appeal.

Nearly two years later, the petitioner filed a *pro se* postconviction petition, alleging that his trial attorney was ineffective for failing to file a timely notice of appeal and for failing to argue on appeal that the pellet gun was not a dangerous weapon. The trial court appointed counsel for the petitioner, and the State filed a motion to dismiss his petition. The trial court denied the State's motion and conducted an evidentiary hearing on the petitioner's claims. After hearing testimony from the petitioner and his attorney, the trial court concluded that defense counsel was ineffective for failing to file a notice of appeal. The court decided that the proper remedy would be to allow the petitioner to file a late notice of appeal *nunc pro tunc* to the date that he was sentenced.

In his direct appeal, the petitioner again argued that the State had failed to prove beyond a reasonable doubt that the gun was a dangerous weapon. The State responded that the appellate court did not have jurisdiction because the notice of appeal was untimely under Supreme Court Rule 606. See 210 Ill. 2d R. 606. The State also asserted that the trial court could have inferred that the gun was a dangerous weapon.

The appellate court stated that the trial court was incorrect in making the notice of appeal *nunc pro tunc* to the date of the petitioner's sentencing, because there was no notice of appeal filed at all. "Nonetheless," continued the appellate court, "a criminal defendant must at some point be afforded the equivalent of direct review and an appellate advocate." After discussing this court's holding in *People v. Moore*, 133 Ill. 2d 331, 338 (1990), the court observed that because appellate jurisdiction was never invoked, the defendant's recourse was filing a postconviction petition. According to the appellate court, the order granting leave to file a notice of appeal was a proper remedy under the Post-Conviction Hearing Act (725 ILCS 5/122–1 *et seq.* (West 2004)). The court turned to the merits and concluded that the State did not prove beyond a reasonable doubt that the pellet gun was a dangerous weapon. The appellate court reversed the petitioner's armed robbery conviction and

remanded so the trial court could enter judgment on the lesser-included offense of robbery and sentence the petitioner accordingly. No. 1–05–2806 (unpublished order under Supreme Court Rule 23). We allowed the State's petition for leave to appeal. 210 Ill. 2d R. 315(a).


## ANALYSIS

The Post-Conviction Hearing Act provides a procedural mechanism through which a criminal defendant can assert "that in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122–1 (West 1998). In a postconviction proceeding, the trial court does not redetermine a petitioner's innocence or guilt, but instead examines constitutional issues that escaped earlier review. *People v. Blair*, 215 Ill. 2d 427, 447 (2005). Here, the petitioner alleged that he received ineffective assistance of counsel when his attorney failed to file a notice of appeal and, consequently, failed to argue on appeal that the gun used in the robbery was not a dangerous weapon.

Ineffective assistance of counsel claims are evaluated under the now-familiar two-prong test of *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). Under *Strickland*, a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused prejudice. *People v. Johnson*, 218 Ill. 2d 125, 143-44 (2005).

In *Roe v. Flores-Ortega*, 528 U.S. 470, 145 L. Ed. 2d 985, 120 S. Ct. 1029 (2000), the Supreme Court extended *Strickland* to ineffective-assistance claims based upon defense counsel's failure to file a notice of appeal: "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal. *Flores-Ortega*, 528 U.S. at 484, 145 L. Ed. 2d at 1000, 120 S. Ct. at 1039.

The performance and prejudice prongs of *Strickland* still apply, but they are tailored to fit this context. Regarding performance, it is professionally unreasonable to disregard specific instructions from the

defendant to file a notice of appeal. *Rodriquez v. United States*, 395 U.S. 327, 23 L. Ed. 2d 340, 89 S. Ct. 1715 (1969).[1] Here, the petitioner filed a *pro se* notice of appeal after he was found guilty by the trial court, but before sentencing, and withdrew it as premature. After he was sentenced on August 10, 2000, he did not file another notice of appeal, and neither did his attorney. In his *pro se* postconviction petition, the petitioner alleged:

> "It was the duty and obligation of [defense counsel] to protect [petitioner's] rights by filing a timely Notice of Appeal. [Petitioner] was not in agreement with the guilty finding and sentence he received and made it clear to [defense counsel] that he wanted to appeal this judgment. [Defense counsel] stated that he would file [a] Notice of Appeal on behalf of his Client and Petitioner assumed that a Notice of Appeal had been filed in this case."

At the evidentiary hearing on his petition, the petitioner testified that he told defense counsel after the trial court's finding of guilt that he wished to appeal his conviction. Defense counsel could not recall such a conversation.

The record thus reveals that the petitioner communicated his desire for a direct appeal to defense counsel. As the trial court correctly stated, filing of a notice of appeal is a ministerial task (see *Flores-Ortega*, 528 U.S. at 477, 145 L. Ed. 2d at 995, 120 S. Ct. at 1035), and defense counsel's performance in failing to file that notice was substandard.

Regarding prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient representation, the defendant would have appealed. *Flores-Ortega*, 528 U.S. at 484, 145 L. Ed. 2d at 1000, 120 S. Ct. at 1039. Stated differently, prejudice may be presumed when defense counsel's ineffectiveness rendered appellate proceedings nonexistent, essentially denying the defendant's right to appeal. *Flores-Ortega*,

---

[1]This is not a case in which the defendant's wishes were unclear and defense counsel failed to consult with the defendant regarding an appeal. In such a case, the performance calculus is different. See *People v. Torres*, No. 104308 (April 17, 2008).

528 U.S. at 484, 145 L. Ed. 2d at 999-1000, 120 S. Ct. at 1038-39.

In *Moore*, the defendant was convicted of first degree murder and attempted armed robbery and sentenced to 80 years' imprisonment. His trial attorney filed a timely notice of appeal, but the appeal was dismissed for want of prosecution after the attorney failed to file a docketing statement. Years later, the defendant filed a motion to reinstate his appeal, which the appellate court denied. This court reinstated the defendant's appeal. *Moore*, 133 Ill. 2d at 336. Reviewing *Evitts v. Lucey*, 469 U.S. 387, 83 L. Ed. 2d 821, 105 S. Ct. 830 (1985), we observed that a defendant whose appeal is dismissed due to ineffective assistance of counsel has two procedural routes to relief: a motion to reinstate the appeal, addressed to the appellate court, or a postconviction petition, addressed to the trial court. *Moore*, 133 Ill. 2d at 337. We continued:

> "[G]iven the *Evitts* decision and the United States Supreme Court's subsequent decision in *Penson v. Ohio*[, 488 U.S. 75, 86, 102 L. Ed. 2d 300, 312-14, 109 S. Ct. 346, 352-54 (1988)], it would appear that a criminal defendant must at some point be afforded the equivalent of direct review and an appellate advocate; a court cannot deny a defendant an attorney-assisted appeal by examining the record and determining that defendant would not have succeeded on appeal in any event. [Citation.] *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 1014 S. Ct. 2052, cannot be applied where a defendant is effectively denied appellate counsel; in such an instance prejudice is presumed to have resulted. [Citation.] Although a post-conviction proceeding can, and should, be utilized in certain circumstances as a remedy for a lost right of appeal, where it is used, no showing of prejudice is required where counsel failed to perfect defendant's appeal." *Moore*, 133 Ill. 2d at 339.[2]

---

[2]In a noncapital case, an appeal is perfected by filing a notice of appeal, and later filing a docketing statement, the record, and an appellant's brief. See *People v. Mena*, 337 Ill. App. 3d 868, 872 (2003); see generally *Coppedge v. United States*, 369 U.S. 438, 442, 8 L. Ed. 2d 21, 26, 82 S. Ct. 917, 919 (1962) ("The only requirements a defendant must meet for

The question becomes, then, simply what relief a postconviction court may order to remedy defense counsel's failure to file a notice of appeal.

According to the State, the trial court had no authority to allow the petitioner to file a late notice of appeal because Supreme Court Rule 606 does not permit a postconviction trial court to disregard the time limits for filing notices of appeal and late notices of appeal. A notice of appeal confers jurisdiction on the appellate court (210 Ill. 2d R. 606(a)), and it must be filed within 30 days after the entry of the final judgment or a timely motion to reconsider that judgment (210 Ill. 2d R. 606(b)). Supreme Court Rule 606(c) provides for late notices of appeal:

> "On motion supported by a showing of reasonable excuse for failing to file a notice of appeal on time filed in the reviewing court within 30 days of the expiration of the time for filing the notice of appeal, or on motion supported by a showing by affidavit that there is merit to the appeal and that the failure to file a notice of appeal on time was not due to appellant's culpable negligence, filed in the reviewing court within six months of the expiration of the time for filing the notice of appeal, in either case accompanied by the proposed notice of appeal, the reviewing court may grant leave to appeal and order the clerk to transmit the notice of appeal to the trial court for filing." 210 Ill. 2d R. 606(c).

Thus, the appellate court can allow a defendant to file a late notice of appeal within 30 days of the expiration of the appeal period, if the defendant shows a reasonable excuse, or within six months of the expiration of the appeal period, if the defendant shows a meritorious issue and a lack of culpable negligence. The State argues that because neither the trial court nor the appellate court may excuse compliance with our rules governing appeals (see *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417, 427 (2005), quoting *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 150 (1994), quoting *In re Smith*, 80 Ill. App. 3d 380, 382 (1980)), the trial court

---

perfecting his appeal are those expressed as time limitations within which various procedural steps must be completed").

here improperly allowed the petitioner to file a late notice of appeal more than five years after he was sentenced, well beyond the time limits of Rule 606(c).

The State relies upon *People v. Lyles*, 217 Ill. 2d 210 (2005). In *Lyles*, the defendant was convicted of voluntary manslaughter and two counts of first degree murder. He was sentenced to death for the murders and 14 years' imprisonment for voluntary manslaughter. On appeal, this court affirmed the defendant's convictions, but vacated his sentences and remanded because of prosecutorial misconduct during the sentencing hearing. On remand, the defendant was sentenced to life imprisonment for the murders and 14 years' imprisonment for voluntary manslaughter. The defendant filed a *pro se* postconviction petition, alleging ineffective assistance of trial and appellate counsel. The trial court dismissed the petition, and the appellate court affirmed.

The defendant then filed a second *pro se* postconviction petition, alleging that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The trial court dismissed this petition as well, and the defendant filed a notice of appeal. The trial court appointed the State Appellate Defender to represent the defendant. After four extensions, appellate counsel never filed a brief for the defendant, and the appellate court dismissed the defendant's appeal for want of prosecution. More than a month later, appellate counsel filed a motion to reinstate this appeal; the State did not object, and the appellate court granted the motion and allowed the defendant to file his brief *instanter*. In its response brief, however, the State argued that the appellate court lost jurisdiction when its dismissal order became final 21 days after it was entered. The appellate court agreed, vacated its order reinstating the appeal, and dismissed the appeal for lack of jurisdiction. This court granted the defendant's petition for leave to appeal.

Initially, we noted two competing considerations: Supreme Court Rule 367(a) requires that a petition for rehearing must be filed within 21 days after a judgment is entered, but postconviction petitioners are entitled to an appeal and appellate counsel. *Lyles*, 217 Ill. 2d at 215-16. We stated, "these are not interests which the appellate court can balance." *Lyles*, 217 Ill. 2d at 216. That is, the appellate court cannot excuse compliance with this court's rules governing appeals; its

power to reinstate an appeal ends when its jurisdiction does, and it does not possess the supervisory authority of this court. *Lyles*, 217 Ill. 2d at 216. Thus, we held that the appellate court acted correctly in vacating its order and dismissing the defendant's appeal, but we used our supervisory authority to reinstate the defendant's appeal. *Lyles*, 217 Ill. 2d at 216, 220.

*Lyles* does not mention Rule 606, but to some appellate court panels, its application is unmistakable. In *People v. Gutierrez*, 376 Ill. App. 3d 182 (2007), the defendant was convicted of first degree murder and attempted first degree murder, and he was sentenced to 60 years' imprisonment. After sentencing, private defense counsel withdrew, and the trial court appointed the State Appellate Defender to proceed with the defendant's appeal. No notice of appeal was filed. Nearly three years later, the defendant filed a postconviction petition, alleging that defense counsel was ineffective for failing to file a notice of appeal. The trial court allowed the defendant to file a late notice of appeal.

The appellate court ordered the parties to brief the issue of jurisdiction, and then dismissed the defendant's appeal. *Gutierrez*, 376 Ill. App. 3d at 183. The appellate court observed that the defendant was not culpable in the loss of his direct appeal, but referred to Rule 606, which sets time limits for filing a notice of appeal or a late notice of appeal. The court stated:

> "No one can reasonably deny the notice of appeal ordered by the trial court was outside the authority of Rule 606(b). The question in this case is whether the trial and appellate courts are free to bypass the rule when appointed counsel does not file a timely notice of appeal. The supreme court supplied the answer in [*Lyles*]." *Gutierrez*, 376 Ill. App. 3d at 184.

After briefly reviewing *Lyles*, the appellate court concluded that the answer was an "emphatic no." *Gutierrez*, 376 Ill. App. 3d at 184.

According to the State, Supreme Court Rule 606(c) is not the only impediment to allowing the petitioner to file a late notice of appeal. The State asserts that section 122–6 of the Post-Conviction Hearing Act does not list a late notice of appeal among the remedies available to a postconviction trial court. See *People v. Ferro*, 195 Ill. App. 3d 282, 287 (1990) ("there is no authority granted in section 122–6 of

the [Post-Conviction Hearing] Act to order a new appeal"); accord *People v. Hightower*, 233 Ill. App. 3d 188, 191 (1992). Section 122–6 provides: "If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings and such supplementary orders as to rearraignment, retrial, custody, bail or discharge as may be necessary and proper." 725 ILCS 5/122–6 (West 2004).

Though it does not involve a claim that defense counsel failed to file a notice of appeal, *People v. Golden*, 369 Ill. App. 3d 639 (2006), which we also accepted for review and have resolved this date (*People v. Golden*, No. 104315 (June 5, 2008)), is relevant here. In *Golden*, the appellate court, relying on *Ferro* and *Hightower*, noted, "Section 122–6 mentions only trial proceedings as the subjects of the trial court's power. Appellate proceedings are nowhere mentioned." Applying the maxim of statutory construction *expressio unius est exclusio alterius*, the court concluded that section 122–6 does not authorize the trial court to allow a late notice of appeal. *Golden*, 369 Ill. App. 3d at 642-43. This interpretation of section 122–6, stated the appellate court, harmonizes that statute with Rule 606(c). *Golden*, 369 Ill. App. 3d at 643. The appellate court, however, did not foreclose all avenues of relief:

> "Our holding that a trial court has no authority to allow a late notice of appeal does not leave without a remedy a defendant whose direct appeal was frustrated by the errors of appellate counsel. The defendant may bring a postconviction challenge arguing that his appellate counsel was ineffective under the performance-prejudice test of *Strickland*." *Golden*, 369 Ill. App. 3d at 645-46.

If a defendant still wants a direct appeal, his recourse lies in the supervisory authority of this court. *Golden*, 369 Ill. App. 3d at 646, citing *Moore*, 133 Ill. 2d at 332.

The State is correct: section 122–6 does not specifically mention leave to file a late notice of appeal among the remedies available to a trial court in a postconviction proceeding. The State, tracking *Golden*, insists that the statute is consequently limited to actions within the trial court's jurisdiction and includes "steps that the trial court is both able and best-suited to make." Allowing the petitioner to file a late notice of appeal is unnecessary, the State argues, because

-10-

"the trial court has other actions it may take to fashion a suitable remedy for a successful petitioner." These actions include treating a postconviction petition as the "functional equivalent" of a direct appeal. According to the State, "once a defendant establishes that he was denied a direct appeal as a result of ineffective assistance of counsel, he should be permitted to raise in a post-conviction proceeding any claim he could have raised on direct appeal without the particular restrictions of the Post-Conviction Hearing Act (such as waiver, timeliness and the requirement of a constitutional claim) imposing obstacles of relief." The State then, while insisting that the Act's listed remedies are exclusive, is apparently willing to relax the Act's requirement of a constitutional claim.

A postconviction claim of ineffective assistance of counsel in failing to perfect an appeal implicates both the right to counsel on appeal and the right to appeal. *Cf. People v. Frank*, 48 Ill. 2d 500, 504 (1971) (holding that the Act is also the "proper vehicle for review of those issues as to which review by direct appeal has been unconstitutionally denied by the deprivation of the right to appeal, the right to competent counsel on appeal, or the concept of fundamental fairness"). A criminal defendant has no federal constitutional right to a direct appeal, but under the Illinois Constitution the right to appeal a criminal conviction is fundamental. See Ill. Const. 1970, art. VI, §6. Though the right to counsel and the right to appeal overlap, a petitioner, like Ross, who claims that defense counsel was ineffective for failing to file a notice of appeal is chiefly arguing the right to appeal was denied. The concern is the appeal itself, not necessarily its outcome. The defendant's trial may have been procedurally and substantively unassailable, but the defendant was deprived of the constitutional right to direct review of the conviction and sentence by an appellate panel. The remedy, then, should fit the wrong. A defendant's whose attorney never filed a notice of appeal is entitled to that appeal, not its functional equivalent. See *Peguero v. United States*, 526 U.S. 23, 28, 143 L. Ed. 2d 18, 24, 119 S. Ct. 961, 965 (1999) ("when counsel fails to file a requested appeal, a defendant is entitled to *** an appeal").

A postconviction petition is no substitute for a direct appeal. See *People v. West*, 187 Ill. 2d 418, 425 (1999) (a postconviction petition is a collateral attack upon a prior conviction and sentence, not a

substitute for or an addendum to a direct appeal). A postconviction petition is considered by a single trial court judge; a direct appeal is considered by three appellate court judges. A postconviction petition must present the gist of a constitutional claim, or face summary dismissal by the trial court; a direct appeal may present any issue of trial error, constitutional or not. Most importantly, a defendant is entitled to effective assistance of counsel in a direct appeal, but there is no corresponding constitutional right to effective assistance of postconviction counsel. See *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003).

We have declined to apply the general rule that a defendant is bound by the acts of defense counsel in cases involving appeals dismissed for want of prosecution. In *People v. Brown*, 39 Ill. 2d 307 (1968), we stated:

> "For a representative system of litigation to function, it is self-evident that under most circumstances clients must be bound by the acts of their lawyers. However, it is equally self-evident that a mechanical application of this legal proposition can lead to harsh results repugnant to commonly held notions of justice and fair play. *** These results can be even harsher in a criminal case than a civil one since in the latter suit the aggrieved client has, in theory, a malpractice action against his attorney for damages, while in the former no attorney can restore his client's lost liberty. This distinction in itself mitigates against inflexibly applying this agency rule to waive substantive rights of defendants in criminal prosecutions." *Brown*, 39 Ill. 2d at 310-11.

See also *People v. Jacobs*, 61 Ill. 2d 590, 592 (1975) ("From the record before us it appears that the defendant has been deprived of his right to direct appeal as a consequence of circumstances over which he had little, if any, control"); accord *People v. Mims*, 82 Ill. 2d 63, 66 (1980); *People v. Aliwoli*, 60 Ill. 2d 579, 582 (1975).

A line of appellate court cases has taken this reasoning and afforded relief in the form of late notices of appeal, despite Rule 606(c) and section 122–6, to defendants whose attorneys have failed to file notices of appeal. In *People v. Perez*, 115 Ill. App. 3d 446 (1983), the defendant was convicted of murder, attempted murder, and two counts of armed violence, and sentenced to 50 years'

imprisonment. More than a year after sentencing, the defendant filed a postconviction petition, requesting appointed counsel for a direct appeal and leave to file a late notice of appeal. The trial court denied the State's motion to dismiss the petition and allowed the defendant to file a late notice of appeal. On appeal, the State argued that the trial court lacked the authority to grant this relief. The appellate court answered, "Although the relief granted by the trial court in this instance is not the usual remedy provided in a post-conviction proceeding, under these circumstances it was the appropriate relief." *Perez*, 115 Ill. App. 3d at 451. The appellate court quoted the Act, and concluded that the trial court is limited in fashioning a remedy not by section 122–6, but only by the purpose of the Act, "which is to promote the concept of fundamental fairness." *Perez*, 115 Ill. App. 3d at 451, citing *Frank*, 48 Ill. 2d at 504.

Subsequent cases have tracked *Perez*, holding that the trial court may allow the defendant to file a late notice of appeal, even if it has lost jurisdiction. See *People v. Thomas*, 292 Ill. App. 3d 891, 895 (1997); *People v. Swanson*, 276 Ill. App. 3d 130, 132 (1995); *People v. Scott*, 143 Ill. App. 3d 540, 542 (1986); see also *People v. Cole*, 287 Ill. App. 3d 147 (1997). These decisions reflect a concern with providing any defendant who so desires at least one full appellate review of a conviction. And they are consistent with *Moore*, where we expressed a preference for appellate court proceedings: "We see no reason to waste the time and resources of an already overburdened circuit court by requiring yet another circuit judge to rule on matters pertaining to defendant's trial, only to have the matter ultimately return to the appellate court on appeal from the circuit court's post-conviction ruling." *Moore*, 133 Ill. 2d at 339-40.

*Perez* and its progeny reach a result that best serves the constitutional interests involved when defense counsel's ineffectiveness results in a denial of the right to appeal. The broad purpose of the Act is to enable the trial court "to review the constitutional integrity or 'fundamental fairness' of the trial proceedings." See *People v. Kubik*, 214 Ill. App. 3d 649, 658-59 (1991). Section 122–6 is flexible enough to include leave to file a late notice of appeal among the remedies available to a trial court in a postconviction proceeding. The Act, thus construed, constitutes a very limited exception to Rule 606. We hold that when a

postconviction petitioner demonstrates that defense counsel was ineffective for failing to file a notice of appeal, the trial court may allow the petitioner leave to file a late notice of appeal.

After finding that the petitioner's late notice of appeal supplied jurisdiction, the appellate court here addressed the merits of his appeal. Likewise, we turn to the merits. The appellate court determined that the State had failed to prove beyond a reasonable doubt that the pellet gun used in the robbery was a dangerous weapon. The State argues that the appellate court failed to apply the appropriate standard of review to the sufficiency of the evidence.

Due process requires proof beyond a reasonable doubt in order to convict a criminal defendant. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). When presented with a challenge to the sufficiency of the State's evidence, a reviewing court must determine whether " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). Under this standard, the reviewing court does not retry the defendant, and the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence. See *People v. Emerson*, 189 Ill. 2d 436, 475 (2000). But merely because the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of its decision. A conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of defendant's guilt. *People v. Smith*, 185 Ill. 2d 532, 542 (1999).

A person commits armed robbery when he or she commits robbery while armed with a dangerous weapon. See 720 ILCS 5/18–1, 18–2(a) (West 2004). In *People v. Dwyer*, 324 Ill. 363 (1927), we construed the predecessor to the current armed robbery statute and acknowledged that some weapons are dangerous (or deadly) *per se*, and other weapons are dangerous in the manner they are used:

> "A gun, pistol or dirk-knife is itself deadly, while a small pocket knife, a cane, a riding whip, a club or baseball bat may

be so used as to be a deadly weapon. [Citations.] A weapon with which death may be easily and readily produced is a deadly weapon; anything made for the purpose of destroying life or for another purpose *** if it is a thing with which death can be easily and readily produced, the law recognizes as a deadly weapon. [Citation.] Where the weapon in question and the manner of its use are of such character as to admit of but one conclusion, the question whether or not it is deadly is one of law for the court to determine, but when the character of the weapon is doubtful or the question depends upon the manner of its use it is a question for the jury to determine from a description of the weapon, from the manner of its use and the circumstances of the case." *Dwyer*, 324 Ill. at 365.

Our holding in *Dwyer* is less than clear. Although that case hints that any gun is dangerous *per se* because it is an object that can readily produce death, it is difficult to characterize an unloaded gun as such an object. The appellate court aptly summarized the authorities in *People v. Greer*, 53 Ill. App. 3d 675, 681-82 (1977):

"Illinois case law indicates that a gun is a dangerous weapon *per se*, unless it is shown that the particular weapon involved in the robbery was not dangerous or, in other words, that the law presumes that an object which has the outward appearance of a gun is dangerous (*i.e.* loaded and operable), but this presumption may be rebutted by proof that it is not."

The *Greer* court noted that, while this approach is sensible, it remains constitutionally suspect because the presumption shifts to the defendant the burden of proving that the weapon was not dangerous. *Greer*, 53 Ill. App. 3d at 682 n.1.

The appellate court here seized upon this statement in holding that the presumption identified in *Greer* is an unconstitutional mandatory rebuttable presumption (see *People v. Pomykala*, 203 Ill. 2d 198, 203 (2003)), and that "the State may not rely on the presumption that a BB gun is loaded or []operable." No. 1–05–2806 (unpublished order under Supreme Court Rule 23). The State argues that the trial court did not rely upon a mandatory presumption but instead made a permissible inference from the evidence presented. "Ultimately," contends the State, "whether the gun was dangerous was an issue properly resolved by the trial court sitting as trier of fact, and the trial

court's finding that the gun was a dangerous weapon should have been viewed in the light most favorable to the [State]."

Our decision in *People v. Skelton*, 83 Ill. 2d 58 (1980), is instructive. In *Skelton*, the defendant robbed a discount store, and a toy gun was found in his waistband shortly thereafter. The gun was made of hard plastic except for the barrel, which was made of thin "tinny metal." The gun was 4½-inches long, and it was quite light. The defendant was convicted of armed robbery and sentenced to 10 years' imprisonment. The appellate court reversed, holding that the toy gun was not a dangerous weapon. We allowed the State's petition for leave to appeal.

Initially, we noted a split in authorities on whether a toy gun could be considered a dangerous weapon. *Skelton*, 83 Ill. 2d at 62. Courts using a subjective approach look to the victim's perception of the gun, while courts using an objective approach look to the nature of the gun. Both approaches, we stated, suffer from "logical and practical difficulties." *Skelton*, 83 Ill. 2d at 62. Based on the language of the armed robbery statute, which requires a person to carry or to be armed with a dangerous weapon, we concluded that the legislature had rejected the subjective approach. *Skelton*, 83 Ill. 2d at 63. Though the "weight of authority" employing the objective approach holds that unloaded guns are dangerous weapons, we acknowledged that this result was problematic. *Skelton*, 83 Ill. 2d at 63-64. We clarified:

> "[A] weapon can be dangerous, even though used in a manner for which it was not designed or intended. Thus, a rifle or shotgun, whether loaded or not, may be used as a club with devastating effect. Similarly, a handgun, when gripped by the barrel and used as a bludgeon, is equally dangerous whether loaded or unloaded. [Citations.]
>
> ***
>
> *** Most, if not all, unloaded real guns and many toy guns, because of their size and weight, could be used in deadly fashion as bludgeons. Since the robbery victim could be badly hurt or even killed by such weapons if used in that fashion, it seems to us they can properly be classified as dangerous weapons although they were not in fact used in that manner during the commission of the particular offense. It

suffices that the potential for such use is present; the victim need not provoke its actual use in such manner." *Skelton*, 83 Ill. 2d at 64-66.

Whether an object is sufficiently susceptible to use in a manner likely to cause serious injury is generally a question of fact. *Skelton*, 83 Ill. 2d at 66.

Since *Skelton*, appellate court cases have refined the common law definition of dangerous weapon by dividing dangerous objects into three categories: (1) objects that are dangerous *per se*, such as loaded guns; (2) objects that are not necessarily dangerous, but were actually used in a dangerous manner during the robbery; and (3) objects that are not necessarily dangerous, but may become dangerous when used in a dangerous manner. See *People v. Lindsay*, 263 Ill. App. 3d 523, 528 (1994); *People v. Burge*, 254 Ill. App. 3d 85, 90 (1993). This effort at categorization is nothing more than a recognition of the proper role for the trier of fact. Contrary to the holding of the appellate court here and in *Greer*, Illinois cases do not create a mandatory presumption that any gun is a dangerous weapon. Instead, our cases conclude that the trier of fact may make an inference of dangerousness based upon the evidence. The State may prove that a gun is a dangerous weapon by presenting evidence that the gun was loaded and operable, or by presenting evidence that it was used or capable of being used as a club or bludgeon. Here, the State did neither.

In *People v. Thorne*, 352 Ill. App. 3d 1062 (2004), the defendant was charged with armed robbery. At trial, the victim testified that the defendant stuck a "black pistol" in his back and to his head. A police officer described the gun as a hard object and identified it as a Marksman .177-caliber black BB gun. The State did not introduce the gun into evidence and provided no pictures of it. The defendant was convicted, and he appealed.

The appellate court held that the State's evidence was insufficient. *Thorne*, 352 Ill. App. 3d at 1073. Relying upon earlier appellate court cases involving toy guns and pellet guns, the appellate court stated:

> "In all the cases that have found guns that are incapable of firing bullets to be dangerous weapons under the armed robbery statute, there was either evidence (1) that the gun was

-17-

actually used in a dangerous manner, or (2) that the character of the weapon was such that it could conceivably be used as a bludgeon. [Citations.] In every case finding that an unloaded gun could have been used as a bludgeon and, therefore, could be considered a dangerous weapon, there was evidence presented as to the physical characteristics (weight or metallic nature) of the weapon. Here, the State failed to present such evidence." *Thorne*, 352 Ill. App. 3d at 1072-73.

The State proved only that the defendant had a small BB gun and that it was a hard object. *Thorne*, 352 Ill. App. 3d at 1073.

As in *Thorne*, the evidence regarding the petitioner's gun was thin. Odumuyiwa testified that the gun was small, portable, and concealable; the police officer testified that the gun was a .177-caliber pellet gun with a three-inch barrel. The State never presented the gun or photographs of the gun at trial. There was no evidence that the gun was loaded, there was no evidence that it was brandished as a bludgeon, and there was no evidence regarding its weight or composition. The trial court incorrectly based its ruling on the subjective feelings of the victim, rather than the objective nature of the gun. The appellate court correctly concluded that the evidence was insufficient to prove that the gun was a dangerous weapon, and correctly directed the trial court to enter a judgment of conviction for simple robbery and sentence the petitioner accordingly.

## CONCLUSION

For the reasons that we have stated, we affirm the judgment of the appellate court.

*Affirmed.*