2025 IL App (2d) 250221-U
No. 2-25-0221
Order filed August 25, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-1446 |
| ANGEL MARQUEZ, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court's revocation of defendant's pretrial release is affirmed, where the evidence reasonably reflected that defendant would not abide by release conditions.

¶ 2    Defendant, Angel Marquez, appeals from the circuit court's order granting the State's petition to revoke his pretrial release, pursuant to section 110-6(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6(a) (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See also Pub. Act 102-1104, § 70 (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023).

¶ 3                                    I. BACKGROUND

¶ 4    On July 7, 2024, defendant was charged with aggravated driving under the influence (DUI) (625 ILCS 5/11-501(a) (West 2022)), DUI (*id*. § 11-501(a)(2)), driving on a suspended license (*id.* § 6-303(a)), obstructing identification (720 ILCS 5/31-4.5(a) (West 2022)), and transportation or possession of open alcohol by a driver (625 ILCS 5/11-502(a) (West 2022)). Defendant was released pretrial, subject to conditions (including that he appear at all court proceedings, not commit any additional criminal offenses, and install a Secure Continuous Remote Alcohol Monitor (SCRAM) device).

¶ 5    Thereafter, on August 7, 2024, defendant failed to appear in court, and the court issued a warrant for defendant's arrest. On April 29, 2025, defendant was contemporaneously arrested on the failure-to-appear warrant and charged (case No. 25-CF-943) with new offenses relating to DUI and having a suspended license. In case No. 25-CF-943, the State authorized felony charges; however, defendant was released on the new charges and issued a "notice to appear" in court at a later date.

¶ 6    On April 30, 2025, defendant appeared in court for his failure-to-appear warrant in case No. 24-CF-1446. The parties agreed to release defendant on pretrial conditions, including the installation of a SCRAM device. The circuit court ordered defendant released on conditions and to appear on May 14, 2025, to provide proof of SCRAM installation.

¶ 7    On May 14, 2025, the State filed a petition to revoke defendant's pretrial release in case No. 24-CF-1446 based on his commission of new offenses in case No. 25-CF-943. The State argued that defendant's pretrial release should be revoked because no combination of conditions would reasonably ensure his appearance at subsequent hearings or prevent defendant from committing further class A misdemeanors or felonies. See 725 ILCS 5/110-6(a) (West 2022). The

same day, defendant appeared at a status hearing with his required SCRAM device. Due to the State's pending petition, he was remanded to custody pending a hearing.

¶ 8    Later that day, a hearing was held on the State's petition. The State introduced into evidence the police synopsis and report from case No. 25-CF-943. The State reiterated defendant's charges in case No. 24-CF-1446 and noted defendant had been released with conditions on April 30, 2025, "before the State was aware that the defendant had picked up a new DUI." Further, the State noted that many of defendant's initial charges were repeated in the new indictment—he was charged with a subsequent DUI after a Good Samaritan called police because defendant was unresponsive in his vehicle. After police arrived, defendant was woken up. During his conversation with police, he had bloodshot and glassy eyes and was slurring his words—"it was very clear that he was under the influence of alcohol." Defendant was taken into custody. While in custody, police discovered that defendant's license was suspended for a prior DUI, he had multiple prior DUIs, and there were outstanding warrants for defendant's arrest for failing to appear in court. Police reviewed with a prosecutor the facts of the case and defendant's driving abstract, and the prosecutor authorized filing the felony charges in case No. 25-CF-943.

¶ 9    The State argued that, based on the new charges, there were no conditions that would mitigate defendant's risk. Thus, it asked the court to revoke defendant's pretrial release. In response, defense counsel argued that defendant committed the new offenses while he was on "warrant status," not pretrial release, and the revocation of defendant's April 30 release was not proper, where defendant had not violated his conditions of release between April 30, 2025, and May 14, 2025. Defense counsel also argued that, because the State agreed to release defendant with conditions on April 30, 2025, it knew about the pending charges in case No. 25-CF-943 that

had been approved by the State's Attorney's office.[1] Thus, it could not now move to revoke those conditions. Moreover, defense counsel argued that defendant appeared in court with a SCRAM device installed, so he had shown that he would comply with conditions of release. In response, the prosecutor asserted that he was not aware of the new charges at the time he agreed to defendant's release with conditions; once he became aware, he filed the instant petition to revoke.

¶ 10    The circuit court granted the State's petition and revoked defendant's pretrial release, finding that there was clear and convincing evidence that no combination of conditions would reasonably ensure the appearance of defendant and prevent him from being charged with a subsequent felony or class A misdemeanor.

¶ 11    On May 19, 2025, defendant moved for relief, alleging that the State failed to prove that no combination of conditions would reasonably ensure his appearance for later hearings or prevent him from reoffending, where he was not on pretrial release at the time he was charged in case No. 25-CF-943 and where he did not violate the terms of his agreed-to release between April 30, 2025, and May 14, 2025.

¶ 12    On May 22, 2025, the court heard arguments on defendant's motion. Defense counsel argued that defendant was entitled to release because, after having notice of case No. 25-CF-943, the State agreed to release defendant on conditions, and defendant did not violate the terms of his agreed-upon release. In other words, the State was seeking to revoke defendant's release based on a charge for which it had already agreed to release defendant. Moreover, defense counsel asserted that the State failed to raise any argument addressing whether conditions of release (like SCRAM)

---

[1]Defense counsel asserted that knowledge of defendant's April 29 charges was imputed to the State because the State was contacted and approved felony charges being filed in case No. 25-CF-943. The prosecutor agreed that his office knew about the felony charges and "the State itself was on notice."

would prevent defendant from committing further violations—"***in particular[,] why SCRAM wouldn't have been sufficient given that it was an agreed condition by the State before, why all of a sudden that is no longer a sufficient condition to prevent future criminality."

¶ 13    In response, the State asserted that there was no gamesmanship at play here, as the prosecutor in court on April 30, 2025, and assigned to case No. 24-CF-1446 did not know defendant had new charges, despite the State having authorized new felony charges. The State acknowledged there had not been a change in circumstances between the defendant's release on conditions and its filing of the petition to revoke. Nonetheless, revocation was necessary because there were no conditions of release that would prevent defendant from driving while his license was suspended (*i.e.*, committing a new felony offense).

¶ 14    Thereafter, the court initially indicated it was inclined to reverse its decision to detain defendant. Defendant would be released with a SCRAM device and ordered not to drive without a valid license.  The court also addressed the issue of the prosecutor's knowledge of the charges in case No. 25-CF-943 when he agreed to release in case No. 24-CF-1446, stating, "Whether or not everybody knew all the facts, I don't know.  I don't know that it matters that much."  Next, the court several times admonished defendant not to drive without a license, warning that, if he did drive, it would reflect that he could not be trusted.  When asked if he understood, defendant replied, "When do I get my license, though?" This response prompted the court to change its mind and revoke defendant's pretrial release. "That's probably the worst thing that you could have possibly said. That is the absolute worse [*sic*] thing you could have said. You know what? You're back in. I'm changing my mind again. You're back in."

¶ 15    On May 22, 2025, defendant filed a notice of appeal. The Office of the State Appellate Defender filed a notice in lieu of a memorandum on July 24, 2025, and the State responded.

¶ 16                                    I. ANALYSIS

¶ 17    On appeal, defendant argues that the circuit court erred in revoking his pretrial release. He asserts that the State failed to prove that no combination of conditions would reasonably ensure his appearance for later hearings or prevent him from committing a subsequent felony or class A misdemeanor, where he was not on pretrial release at the time he was charged in case No. 25-CF-943, and he did not violate the terms of his agreed-to release between April 30 and May 14, 2025. For the following reasons, we reject defendant's arguments.

¶ 18    Under our supreme court's decision in *People v. Morgan*, 2025 IL 130626, ¶ 54, "when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." However, where, as here, there is live testimony at the hearing, we defer to the court's factual findings, which we will reverse only if they are against the manifest weight of the evidence. *Id.* Further, although *Morgan* involved an initial petition for detention pursuant to section 110-6.1, not a revocation determination pursuant to section 110-6(a), its reasoning applies to revocation hearings where the parties proceed solely by proffer. "There is no basis to distinguish *Morgan* based on the type of hearing—detention or revocation." *People v. Vega*, 2025 IL App (2d) 250002-U, n.3; see also *People v. Taber*, 2025 IL App (2d) 240562, ¶ 14.

¶ 19    A defendant's pretrial release may be revoked "if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release." 725 ILCS 5/110-6(a) (West 2022). Before a defendant's pretrial release may be revoked, the court presiding over the initial felony or class A misdemeanor must hold a revocation hearing. *Id*. During the hearing, the State bears the burden of proving, by clear and convincing evidence, that no

combination of release conditions would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor. *Id.* The court, in coming to a determination, shall consider all relevant circumstances, including the nature and seriousness of the violation or criminal act alleged. *Id.*

¶ 20 We conclude that the circuit court did not err in revoking defendant's pretrial release. Defendant was on pretrial release in case No. 24-CF-1446, when he failed to appear in court and provide proof that he obtained a SCRAM device. Thereafter, a warrant was issued for his arrest. Defendant then committed new, substantially similar offenses in case No. 25-CF-943 while still on pretrial release in case No. 24-CF-1446.[2] Significantly, at the hearing on his motion for relief, after the court repeatedly admonished defendant not to drive, defendant asked, "When do I get my license, though?" The court appears to have interpreted this response as reflecting defendant's intent to continue driving despite the court's warnings and prompted the court to revoke defendant's pretrial release. We defer to the court's assessment of witness credibility (*People v. Ross*, 229 Ill. 2d 255, 272 (2008)) and conclude that the evidence reasonably reflected that conditions such as ordering defendant not to drive and requiring a SCRAM device would not prevent him from reoffending, as he showed an aptitude for ignoring court orders. Finally, because the colloquy between the court and defendant is outcome determinative, we do not reach the issue whether knowledge of the April 29, 2025, charges was imputed to the State when it agreed to defendant's pretrial release.

---

[2]We believe it matters not that defendant was on "warrant status," as opposed to pretrial release, as defendant argues, because he was released on conditions before violating those conditions and having a warrant issued for his arrest. In other words, defendant was *both* on "warrant status" and pretrial release at the time he committed the offenses charged in case No. 25-CF-943.

¶ 21                                    III. CONCLUSION

¶ 22    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 23    Affirmed.