Filed 12/19/08          NO. 4-07-0838

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| DIYEZ RAMON OWENS, | ) | No. 06CF1234 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott Drazewski, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

Following a May 2007 trial, a jury convicted defendant, Diyez Ramon Owens, of two counts of armed robbery (720 ILCS 5/18-2(a) (West 2004)) and two counts of aggravated robbery (720 ILCS 5/18-5(a) (West 2004)). In September 2007, the trial court sentenced defendant to concurrent 10-year prison terms on each armed-robbery count.

Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt of armed robbery and (2) he was denied effective assistance of posttrial counsel. We disagree and affirm.

I. BACKGROUND

In December 2006, the State charged defendant with armed robbery (720 ILCS 5/18-2(a) (West 2004)) and aggravated robbery (720 ILCS 5/18-5(a) (West 2004)). In January 2007, the grand jury charged defendant with an additional count of (1)

armed robbery (720 ILCS 5/18-2(a) (West 2004)) and (2) aggravated robbery (720 ILCS 5/18-5(a) (West 2004)).

A. The Evidence Presented at Defendant's Trial

At defendant's May 2007 trial, the State presented evidence that in September 2004, defendant, Tommy Slaton, Damoni Clemon, and Johnnie Bankston robbed a Mac's convenience store at gunpoint. (Slayton, Clemon, and Bankston are not parties to this appeal.)

The general manager of Mac's, Joseph Jantze, testified that (1) the armed robbers took a total of more than $8,800 from the store register, safe, and automatic teller machine (ATM), and (2) a surveillance camera captured the 2 1/2-minute robbery.

Mac's employees Patricia Smith and Dorothy Tucker-- both of whom had a criminal record--were working the night of the robbery. Smith testified, in pertinent part, that (1) at least two men came into the store wearing ski masks, hoods, and gloves and (2) one of the men ordered her and Tucker to the floor at gunpoint. Later, one of the men ordered Smith to get up and put the money from the store's cash register into a bag. However, Smith acknowledged that she could not positively identify any of the men. Tucker did not testify and was later convicted for her participation in the robbery. (Tucker is not a party to this appeal.)

Smith's boyfriend, Larry Coleman--who also had a

- 2 -

criminal record--was in the store at the time of the robbery. Coleman testified that he saw (1) three or four men come into the store wearing dark clothes and hoods and (2) at least two of the men were armed with pistols and one man was armed with a metal pipe.

Schmond Simmons, a Mac's customer, testified that his back was to the door when the men entered Mac's but that he went to the ground when he saw a "guy dressed in all dark clothing with a gun in his hand." Simmons recalled that one of the men searched him and took money from his pockets.

Jeff Goforth, who lived across the street from Mac's at the time of the robbery and also had a criminal record, testified that he (1) saw four men run into the store, (2) saw the customers disappear onto the floor, (3) told his girlfriend to call the police, (4) ran across the street to warn other prospective customers to stay outside the store, (5) saw four men with ski masks leave the store, and (6) could tell that the men were African-American because he could see their skin color through the eye and mouth holes in their masks.

Slayton pleaded guilty to armed robbery in connection with the Mac's robbery and agreed to testify against defendant in exchange for a six-year sentence. Slayton testified that (1) Clemon, his roommate, approached him about committing a robbery; (2) Amanda Hodel, the mother of Bankston's child, came over; (3)

Clemon went to Hodel's car, gave him a ski mask and a pipe wrench, and said, "come on"; (4) he, Hodel, Clemon, Bankston, and defendant drove to Mac's and parked beside the store; (5) he, Clemon, Bankston, and defendant went into the store wearing ski masks, while Hodel waited in the car; (6) the four men robbed the store and drove away; (7) a short time later, the group ditched the car and ran toward Clemon's house; (8) he dropped the ATM box, pipe wrench, and ski mask as he ran; (9) he stayed with friends for a while before returning to Clemon's house; and (10) he went back to retrieve the ATM box, the proceeds from which the group later divided.

Abe McDaniel, an acquaintance of Tucker, testified that (1) he was in the Chestnut Health Systems rehabilitation center (hereinafter Chestnut) in January 2005; (2) while in Chestnut, he was defendant's roommate; and (3) defendant told him that he had robbed Mac's with Bankston, Slayton, and Clemon.

Hodel--who also had a criminal record--testified that (1) on the day of the Mac's robbery, she borrowed her friend's car; (2) on her way to buy dog food, she stopped by Clemon's house to see whether Bankston wanted to go; (3) Clemon, Bankston, Slayton, and defendant were at Clemon's house and asked her if she would take them to Mac's; (4) she agreed to take the group to Mac's and let Clemon drive; (5) the group parked outside Mac's and sat in the car for a long time before she left to use the

restroom; (6) when she returned, the group told her that they were waiting for someone; (7) a short time later, the group left to get a drink; (8) because she had been waiting a while for them to return, she went to see what was taking so long; (9) she was stopped at the front of Mac's by a man who told her that Mac's was being robbed; (10) she watched as the group left the store, got into the car, and drove away; (11) she went to Clemon's house sometime later; (12) Clemon gave her a pack of cigarettes and $200 in cash but did not tell her why he was doing so; and (13) she did not receive any other money from the robbery.

Bankston also pled guilty to armed robbery in connection with the Mac's robbery and agreed to testify against defendant in exchange for a six-year sentence. Bankston testified that (1) Hodel was the mastermind behind the robbery and provided the guns and transportation; (2) Hodel told them that she would go into the store and if she came out empty-handed, that was a signal that the store was empty; (3) Hodel went into the store and came out empty-handed; (4) he, Clemon, Slayton, and defendant, knowing that was the signal to start the robbery, went into the store; and (5) after the robbery, they each gave Hodel $200.

Defendant testified that (1) he was not involved in the Mac's robbery; (2) he was not all that familiar with Hodel, Clemon, Bankston, or Slayton; and (3) although he was McDaniel's roommate at Chestnut, he did not tell McDaniel anything about a

- 5 -

robbery.

The jury thereafter convicted defendant of two counts of armed robbery (720 ILCS 5/18-2(a) (West 2004)) and two counts of aggravated robbery (720 ILCS 5/18-5(a) (West 2004)).

### B. Sentencing

In July 2007, the trial court appointed defendant a new attorney in response to defendant's pro se letter alleging ineffective assistance of trial counsel. After meeting with defendant and reviewing all the discovery materials and some of the trial transcripts, defendant's new counsel filed a motion for a new trial. Following a September 2007 evidentiary hearing, the court denied defendant's motion.

At defendant's sentencing hearing, defense counsel (1) corrected inaccuracies in defendant's presentence investigation report and (2) presented, in mitigation, a letter defendant had written. Defense counsel recommended that the trial court sentence defendant to six years in prison because Slayton, Bankston, and Tucker were sentenced to six years in prison, despite Slayton's and Bankston's "significant criminal histories" and Tucker went to trial on her charge. Defense counsel also asked the court to consider that defendant (1) suffered from depression and had issues with cocaine and cannabis abuse; (2) had a learning disability; (3) successfully completed (a) residential treatment, (b) outpatient treatment, and (c) domestic-

violence classes; and (4) had a relationship with his three children.

The State recommended that the trial court sentence defendant to 20 years in prison. The court rejected the State's recommendation, in part, because defendant's involvement was similar to that of Slayton and Bankston, who each received six years in exchange for their guilty pleas. The court found that (1) Hodel was "given a pass"; (2) Tucker also received a six-year prison term; (3) "justice and equity" required that defendant receive a sentence similar to that of his codefendants; (4) the minimum six-year sentence would be inappropriate, however, given defendant's criminal history; (5) because defendant's conduct threatened serious harm, the sentence imposed needed to deter others from committing similar offenses; (6) defendant's term in prison might impose excessive hardship on his dependants; and (7) defendant's participation in anger-management and other programs were positive factors in mitigation.

The trial court thereafter vacated defendant's aggravated-robbery convictions as lesser-included offenses of armed robbery and sentenced him to concurrent 10-year prison terms on each armed robbery count.

### C. Postsentencing

After sentencing defendant, the trial court admonished him pursuant to Supreme Court Rule 605(a)(3) (210 Ill. 2d R.

605(a)(3)).  The court then called a brief recess to give defendant an opportunity to confer privately with defense counsel regarding his options.  Following the recess and private conference, the court asked defense counsel "what, if any, decision" defendant had made respecting his right to appeal.  Defense counsel replied as follows:

> "Judge, we had some preliminary discussions of this prior to anything we've done here today.  And I just was confirming with him that we were going to proceed on that path.  At this time I believe [defendant] would waive the issues of sentencing and will not be asking to file a motion to reconsider sentence but will be asking for the clerk to file a motion with the court to appeal."

This appeal followed.

## II. ANALYSIS

### A. Defendant's Claim That the State Failed To Prove Him Guilty Beyond a Reasonable Doubt

Defendant argues that the State failed to prove that he committed armed robbery beyond a reasonable doubt.  Specifically, defendant contends that the evidence the State presented placing him at the scene of the robbery was contradictory testimony from criminals and codefendants who testified to avoid incarceration.  We disagree.

- 8 -

When reviewing challenges to the sufficiency of the evidence in a criminal case, the reviewing court's function is not to retry the defendant. People v. Sutherland, 223 Ill. 2d 187, 242, 860 N.E.2d 178, 217 (2006). Rather, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime upon which the defendant was convicted beyond a reasonable doubt. People v. Ross, 229 Ill. 2d 255, 272, 891 N.E.2d 865, 876 (2008). The reviewing court may not substitute its judgment for that of the trier of fact. People v. Jones, 219 Ill. 2d 1, 33, 845 N.E.2d 598, 616 (2006). "The weight to be given the witnesses' testimony, the credibility of the witnesses, resolution of inconsistencies and conflicts in the evidence, and reasonable inferences to be drawn from the testimony are the responsibility of the trier of fact." Sutherland, 223 Ill. 2d at 242, 860 N.E.2d at 217.

To sustain a conviction for armed robbery, the State is required to prove beyond a reasonable doubt that the accused (1) took property from the person or presence of another by the use of force or by threatening the imminent use of force (720 ILCS 5/18-1 (West 2004)) and (2) carried on or about his person or was otherwise armed with a firearm (720 ILCS 5/18-2(a)(2) (West 2004)). When a person engages in a common criminal design to

commit a crime such as armed robbery, he is responsible for that other person's criminal conduct in furtherance of that goal. See People v. Perez, 189 Ill. 2d 254, 266, 725 N.E.2d 1258, 1264-65 (2000) (noting that intent may be inferred from the defendant's acts as well as the circumstances surrounding the criminal act).

In this case, the State presented evidence that (1) four men took approximately $8,800 from Simmons and Smith, and (2) at least two of the men were armed with handguns, while one was wielding a metal pipe. Slayton, Hodel, and Bankston each testified that defendant was one of the four men. Although all three of these witnesses' testimony varied to some degree, their testimony was consistent on the following points: (1) Clemon, Hodel, Slayton, Bankston, and defendant rode to Mac's together from Clemon's house and (2) Clemon, Slayton, Bankston, and defendant went into Mac's with the intent to commit an armed robbery. Moreover, McDaniel testified that defendant admitted to him that he participated in the armed robbery while the two were roommates at Chestnut.

The jury was fully aware that (1) Slayton and Bankston cooperated with the State to secure a reduced sentence for their role in the armed robbery; (2) Holder agreed to testify in an effort to avoid being charged at all; and (3) McDaniel tried--to no avail--to make a deal with the State in exchange for his testimony. Considering the jury was fully aware of these wit-

nesses' background and potential motives, we conclude that it was in a position to competently judge their credibility and draw reasonable inferences therefrom.

### B. Defendant's Claim That Posttrial Counsel Was Ineffective for Waiving Any Challenge to Potential Sentencing Issues

Defendant next argues that his posttrial counsel was ineffective for waiving any challenge to potential sentencing issues. Specifically, defendant contends that his posttrial counsel's failure to file a motion to reconsider sentence was tantamount to not being represented at all. We disagree.

Because the time of filing a motion to reconsider sentence is considered a "critical stage" of a criminal proceeding, a defendant is entitled to consult with counsel to determine whether such a motion should be filed. People v. Bailey, 364 Ill. App. 3d 404, 408, 846 N.E.2d 147, 150 (2006). However, it does not follow that counsel is per se ineffective for failing to file a motion to reconsider sentence when, in counsel's judgment, such a filing would be frivolous. Bailey, 364 Ill. App. 3d at 408, 846 N.E.2d at 150.

A defendant retains sole discretion in a criminal case to decide--after consultation with his attorney--(1) what plea to enter, (2) whether to waive a jury trial, (3) whether to testify, (4) whether to appeal, and (5) whether to submit an instruction on a lesser-included offense. See People v. Ramey, 152 Ill. 2d 41, 54, 604 N.E.2d 275, 281 (1992) (articulating the first four);

see also <u>People v. Brocksmith</u>, 162 Ill. 2d 224, 229, 642 N.E.2d 1230, 1232 (1994) (adding whether to submit an instruction on a lesser-included offense to the list).  "Beyond these *** decisions, however, trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy after consulting with his client."  <u>Ramey</u>, 152 Ill. 2d at 54, 604 N.E.2d at 281 (explaining that such matters include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept, and what motions should be made).

For example, when cross-examining a State witness, defense counsel is not required to explain defendant counsel's tactical judgment on how best to challenge the witness's testimony.  Defendant possesses no right to be consulted about counsel's tactical judgment nor to reject it in favor of some other strategy more to defendant's liking.  Likewise, the decision not to file a motion to reconsider sentence--thereby waiving any later challenge to a defendant's sentence--is similarly a matter left ultimately to counsel's professional judgment and discretion.

Defendant cites the Second District's decision in <u>People v. Brasseaux</u>, 254 Ill. App. 3d 283, 660 N.E.2d 1321 (1996), for the proposition that defense counsel is required at a posttrial hearing to "ensure that the trial court made an appropriate reconsideration of the sentence."  Defendant then tries to

turn this rather unremarkable proposition into a contention that Brasseaux requires counsel to file a motion to reconsider sentence in every case, even if counsel believes the motion to be groundless. We are not persuaded that Brasseaux stands for this proposition, but if it does, we decline to follow it.

In Brasseaux, the defendant was appointed new counsel to represent him at a hearing that was set in response to the defendant's pro se filing labeled "Motion to Reconsider Sentence." Brasseaux, 254 Ill. App. 3d at 286, 660 N.E.2d at 1323. The defendant was not present at the hearing on his pro se motion and his newly appointed counsel, without contacting the defendant to discuss the viability of his claims, failed to amend the defendant's motion--which was otherwise deficient. Brasseaux, 254 Ill. App. 3d at 289, 660 N.E.2d at 1325. On review, the court held that counsel was ineffective for failing to consult with the defendant when, given the facts of that case, a reasonable probability existed that the result would have been different had all the defendant's issues been presented to the court. Brasseaux, 254 Ill. App. 3d at 289, 660 N.E.2d at 1325.

Here, unlike the attorney in Brasseaux, trial counsel exercised her professional judgment about the groundless nature of any postsentencing motion after consulting with her client. Specifically, counsel explained to the trial court--after the court had called a brief recess to give defendant an opportunity

- 13 -

to confer privately with counsel--that (1) she had previously discussed the issue with defendant, (2) he had confirmed his earlier decision during the recess, and (3) they were not going to contest his sentence.

To clarify our holding, we reject any notion that counsel is ever required to file a nugatory motion, particularly when, as here, the record reveals that counsel had (1) previously considered the issue and (2) discussed it with her client just before deciding not to pursue such a motion. See People v. Greer, 212 Ill. 2d 192, 205, 817 N.E.2d 511, 520 (2004) ("An attorney *** who determines that defendant's claims are meritless cannot in good faith file an amended petition on behalf of defendant").

In closing, we commend the trial court for giving counsel the time and opportunity to discuss this issue with her client at the posttrial hearing, although the court was not required to do so because the decision whether to file a postsentencing motion was for counsel to make in her discretion.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

TURNER and APPLETON, JJ., concur.