(No. 67949.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CARLOS MOORE, Appellant.

*Opinion filed January 17, 1990.*

STAMOS, J., took no part.

Dennis Doherty, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund and Elizabeth Sklarsky, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CALVO delivered the opinion of the court:

Defendant, Carlos Moore, was charged in the circuit court of Cook County with murder and attempted armed robbery. He and three codefendants were tried jointly before a jury and were found guilty as charged on July 30, 1979. Defendant was sentenced to 80 years' imprisonment. Notice of appeal was filed June 2, 1980. The appeal was dismissed on July 22, 1980, for want of prosecution. Defendant's retained counsel had failed to file a docketing statement. In September of 1983, proceedings were initiated before the Attorney Registration and Disciplinary Commission (ARDC) which culminated in the attorney's suspension from the practice of law for 18 months, due in part to his neglect of defendant's appeal. (*In re Fox* (1988), 122 Ill. 2d 402.) Subsequent to his attorney's suspension, defendant filed a motion to rein-

state his appeal. His motion to reinstate was denied on September 27, 1988, and motions for reconsideration were thereafter denied. We allowed defendant's petition for leave to appeal pursuant to our Rule 315 (107 Ill. 2d R. 315).

The documents presented in support of defendant's motion to reinstate his appeal indicate that defendant first complained of his attorney's inaction on September 27, 1983, in a letter to Dennis Dohm of the Administrative Office of the Illinois Courts. In this letter, defendant stated that his trial counsel had agreed to represent him on appeal and that counsel had been paid to prosecute the appeal. Defendant claimed he had not heard from his attorney since 1980. He stated:

> "Now any able-minded person knows that it does not take three years [for an attorney] to forward his client the necessary materials in order so [sic] he could know what issues are being filed in his behalf, or know what stage his appeal is in. Mr. Dohm, I'm at a complete disadvantage as far as my appeal is concerned. I'm just an indigent defendant *** with no where to turn."

By a letter dated September 30, 1983, defendant was informed that his letter was being forwarded to the ARDC.

It appears that defendant eventually filed a complaint with the ARDC. In this complaint, defendant reiterated much of what was contained in his September 27 letter to the Administrative Office of the Illinois Courts. He again appealed for "help in this matter." In responding to the complaint, defendant's attorney claimed defendant's appeal had been "denied." Defendant was sent a copy of his attorney's response. On November 5, 1984, the ARDC sent defendant a letter apprising him that a formal complaint would be filed against his attorney. The ARDC complaint, filed January 27, 1986, alleged:

"At [no] time following the July 22, 1980 order [of dismissal], did Respondent take any action to reinstate the appeal in case no. 80—1615 or advise Moore that his appeal had been dismissed."

There is nothing in the documents presented to us which would indicate defendant received a copy of the ARDC complaint.

What does appear is a compilation of some of the letters written to and by defendant during the period from May 19, 1986, to August 4, 1988. A summary chronicle of these letters follows:

| | |
|---|---|
| Letter from ARDC to defendant requests defendant's presence at ARDC hearing. | 5/19/86 |
| In a letter from defendant to ARDC, defendant requests information regarding the status of disciplinary proceedings and his appeal. | 12/17/86 |
| ARDC informs defendant he need not appear at the disciplinary hearing. | 1/8/87 |
| Letter from Administrative Office of the Illinois Courts advises defendant to submit a written demand to his attorney for return of retainer paid and for defendant's transcript. | 10/8/87 |
| In a letter to the circuit court of Cook County, defendant requests his trial transcript per advice of the "Administrative Court Judge." | 10/19/87 |
| ARDC receives letter from defendant inquiring as to the reason for his attorney's suspension and seeking "needed material to perfect [his] appeal." | 12/11/87 |

| | |
|---|---|
| In a letter from ARDC to defendant, ARDC reiterates that Review Board had "recommended" suspension for 18 months due to attorney's neglect of defendant's and others' criminal appeals. | 12/16/87 |
| Letter from ARDC with enclosed copy of May 31, 1988, order suspending defendant's attorney, informs defendant, "Although we cannot comment or advise you as to other remedies available to you, we do recommend that you consult an attorney." | 8/4/88 |

Defendant's motion to reinstate his appeal states that defendant did contact an attorney and, in July of 1988, was advised that his appeal had been dismissed for want of prosecution. Defendant, who had only a ninth-grade education, claims he had not understood what had happened until he was so advised. He promptly moved for reinstatement of his direct appeal upon learning what had transpired. The appellate court denied, without comment, defendant's motion to reinstate and subsequent motions to reconsider.

At the outset, we note that there is no dispute between the parties as to the ground for dismissal of defendant's appeal or defendant's efforts to preserve his right to a direct appeal. The State, however, questions the adequacy of defendant's efforts and contends that defendant's remedy lies, not in the reinstatement of his direct appeal, but in the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*). Relying primarily upon this court's decisions in *People v. Mims* (1980), 82 Ill. 2d 63, *People v. Jacobs* (1975), 61 Ill. 2d 590, *People v. Aliwoli* (1975), 60 Ill. 2d 579, and *People v. Brown* (1968), 39 Ill. 2d 307, defendant contends he is

entitled to reinstatement of his direct appeal. We believe defendant's direct appeal should be reinstated, and so order.

In *Evitts v. Lucey* (1985), 469 U.S. 387, 83 L. Ed. 2d 821, 105 S. Ct. 830, the United States Supreme Court addressed a question very similar to the one at bar. In *Evitts*, the criminal defendant's direct appeal was dismissed in State court because his attorney had failed to comply with a Kentucky rule of procedure which required the filing of a "statement of appeal." Attempts to obtain either reinstatement of the lapsed appeal or a belated appeal proved unavailing at the State level. Defendant fared better in Federal court where he was granted a conditional writ of *habeas corpus* ordering his release unless Kentucky either reinstated his appeal or retried him. The Court of Appeals for the Sixth Circuit affirmed (*Lucey v. Kavanaugh* (6th Cir. 1984), 724 F.2d 560), and the Supreme Court granted a petition for *certiorari*. The Court affirmed, concluding that "nominal representation on an appeal as of right *** does not suffice to render the proceedings constitutionally adequate." (*Evitts*, 469 U.S. at 396, 83 L. Ed. 2d at 830, 105 S. Ct. at 836.) The Court held that a State cannot penalize a criminal defendant by dismissing his first appeal as of right when his counsel has failed to follow mandatory appellate rules. (See *Pennsylvania v. Finley* (1987), 481 U.S. 551, 557, 95 L. Ed. 2d 539, 547, 107 S. Ct. 1990, 1994.) In so holding, however, the Court recognized that State courts must somehow enforce a wide range of vital procedural rules governing appeals and the Court spoke to that concern:

> "To the extent that a State believes its procedural rules are in jeopardy, numerous courses remain open. For example, a State may certainly enforce a vital procedural rule by imposing sanctions against the attorney, rather than against the client. Such a course may well be more

effective than the alternative of refusing to decide the merits of an appeal and will reduce the possibility that a defendant who was powerless to obey the rules will serve a term of years in jail on an unlawful conviction. If instead a State court chooses to dismiss an appeal when an incompetent attorney has violated local rules, it may do so if such action does not intrude upon the client's due process rights. For instance the Commonwealth of Kentucky itself in other contexts has permitted a post-conviction attack on the trial judgment as 'the appropriate remedy for frustrated right of appeal,' *Hammershoy v. Commonwealth*, 398 S.W.2d 883 (Ky. 1966); this is but one of several solutions that state and federal courts have permitted in similar cases. A system of appeal as of right is established precisely to assure that only those who are validly convicted have their freedom drastically curtailed. A State may not extinguish this right because another right of the appellant—the right to effective assistance of counsel—has been violated." *Evitts*, 469 U.S. at 399-400, 83 L. Ed. 2d at 832, 105 S. Ct. at 837-38.

*Evitts* and the cases cited therein, both in text (*Hammershoy*) and footnote (*Rodriquez v. United States* (1969), 395 U.S. 327, 23 L. Ed. 2d 340, 89 S. Ct. 1715; *United States v. Winterhalder* (10th Cir. 1983), 724 F.2d 109; *Stahl v. Commonwealth* (Ky. 1981), 613 S.W.2d 617), collectively indicate that either a motion to reinstate an appeal, addressed to the appellate court, or a post-conviction attack, addressed in the first instance to the trial court, can be utilized to obtain relief where a direct appeal has been dismissed due to the neglect of defendant's attorney. *Stahl*, like *Evitts*, would appear to sanction either procedure. (*Stahl*, 613 S.W.2d at 618.) *Winterhalder* held that the filing of a notice of appeal transfers jurisdiction from the district court to the court of appeals; thus, the court concluded, the power to reinstate an appeal previously dismissed for failure to prosecute lies with the court of appeals, not the district court. (*Winterhalder*, 724 F.2d at 109.) The court of appeals in

*Hammershoy* allowed a post-conviction attack in the trial court, but stated, "the right of an indigent defendant in a criminal case to the assistance of counsel on appeal *** cannot be subjected to a [threshold] determination by either a court or state-provided counsel that the grounds for appeal are meritorious, or 'feasible'." (*Hammershoy*, 398 S.W.2d at 884.) The Supreme Court in *Rodriquez* sanctioned use of a post-conviction attack in the district court, under a Federal statute (28 U.S.C. §2255 (1964)) bearing some similarities to our own Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*), but determined that a defendant seeking relief under the statute for a loss of appellate rights need not have specified the points he would have raised if his right to appeal had been reinstated:

> "Those whose education has been limited and those, like petitioner, who lack facility in the English language might have grave difficulty in making even a summary statement of points to be raised on appeal. Moreover, they may not even be aware of errors which occurred at trial. They would thus be deprived of their only chance to take an appeal even though they have never had the assistance of counsel in preparing one. *** Those whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings." *Rodriquez*, 395 U.S. at 330, 23 L. Ed. 2d at 344, 89 S. Ct. at 1717.

*Cf. People v. Wilk* (1988), 124 Ill. 2d 93, 107-08, 112-13.

This court has, depending upon the facts of each case, specified either a motion in the appellate court to reinstate the appeal or a post-conviction attack in the circuit court as an appropriate remedy for loss of the right to appeal. For example, this court has held that defendants, who were deprived of their right to be heard in the appellate court because of their attorneys' failure

to comply, in the trial court, with the requirements of Rule 604(d) (107 Ill. 2d R. 604(d)), were relegated to a post-conviction challenge in the circuit court rather than direct action in the appellate court. (*Wilk*, 124 Ill. 2d at 103-107.) Where there are factual questions to be determined concerning trial counsel's performance in the circuit court, this court has determined that the circuit court is the appropriate forum for consideration of those issues in the first instance by way of post-conviction attack, even though trial counsel's conduct may also have adversely affected defendant's right to appeal. (*Wilk*, 124 Ill. 2d at 107.) The remedial procedure utilized in *Wilk* is permissible under *Evitts*, but given the *Evitts* decision and the United States Supreme Court's subsequent decision in *Penson v. Ohio* (1988), 488 U.S. 75, 102 L. Ed. 2d 300, 109 S. Ct. 346, it would appear that a criminal defendant must at some point be afforded the equivalent of direct review and an appellate advocate; a court cannot deny a defendant an attorney-assisted appeal by examining the record and determining that defendant would not have succeeded on appeal in any event. (*Penson*, 488 U.S. at 86, 102 L. Ed. 2d at 312-14, 109 S. Ct. at 352-54.) *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, cannot be applied where a defendant is effectively denied appellate counsel; in such an instance prejudice is presumed to have resulted. (*Penson*, 488 U.S. at 88, 102 L. Ed. 2d at 313-14, 109 S. Ct. at 353-54.) Although a post-conviction proceeding can, and should, be utilized in certain circumstances as a remedy for a lost right of appeal, where it is used, no showing of prejudice is required where counsel failed to perfect defendant's appeal. Prejudice is presumed.

While a post-conviction proceeding was held to be preferable under the facts of *Wilk*, where a defendant, as here, has once properly invoked appellate jurisdiction,

only to have his appeal dismissed, through no fault of his own, for appellate counsel's failure to comply with appellate rules, this court has opted for reinstatement of the appeal by motion in the appellate court in instances where defendant has taken reasonable steps to preserve his right to appeal, and where there are no complex factual questions to be determined by the trial court. (See *Mims*, 82 Ill. 2d at 65-66; *Jacobs*, 61 Ill. 2d at 592; *Aliwoli*, 60 Ill. 2d at 581-82.) We see no reason to waste the time and resources of an already overburdened circuit court by requiring yet another circuit judge to rule on matters pertaining to defendant's trial, only to have the matter ultimately return to the appellate court on appeal from the circuit court's post-conviction ruling. All issues may well be resolved on direct appeal; however, even if defendant does eventually pursue post-conviction relief, many issues will have been raised and resolved on direct appeal, thus narrowing the scope of inquiry in post-conviction proceedings and thereby facilitating disposition of a post-conviction action in the event one is commenced.

The State argues that defendant should be relegated to pursuit of post-conviction relief because otherwise defendant "will undoubtedly reap benefits from changes in the law that have occurred since his conviction." The State notes that new rules of law may be applicable to cases pending on direct review but may not be applicable to cases on collateral review. Specifically, the State expresses concern that defendant may rely upon *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714, if his direct appeal is reinstated. According to the State, reinstatement of defendant's appeal through "flexible application of the rules leaves the door open for such delaying tactics to become a form of appellate strategy whereby a defendant might put off timely pursuit of his appeal in hopes of benefitting from an advantageous change in the law."

We believe the State's concern is, in any event, without basis in reality. The idea that incarcerated defendants would "put off" their appeals, spending perhaps unnecessary years in prison, and that criminal defense attorneys would allow defendants' appeals to be dismissed, thereby risking disciplinary action, all "in hopes of benefitting from *** advantageous change[s] in the law," seems to us unlikely. The specter which the State raises does not dissuade us from following precedent in this matter. Moreover, we deem it inappropriate to consider the hypothetical applicability of any particular case which defendant might raise on direct appeal in deciding whether defendant's appeal should be reinstated. Even if defendant's appeal had been timely processed, there would still have been the possibility that developments in case law during the pendency of his appeal might have become applicable thereto. Although we acknowledge an increased possibility that the law may change where an appeal is delayed, as this one was, we do not believe the increased possibility of change warrants denying this defendant a direct appeal under the circumstances.

Accordingly, defendant's appeal to the appellate court is reinstated, and the cause is remanded to that court for further proceedings.

*Appeal reinstated;*
*cause remanded.*

JUSTICE STAMOS took no part in the consideration or decision of this case.