THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT KOCH, Defendant-Appellant.

First District (5th Division)   No. 1—91—3562

Opinion filed September 9, 1994.—Rehearing denied October 12, 1994.

Michael J. Pelletier and James E. Chadd, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

On January 12, 1981, the defendant, Robert Koch (Robert), was charged by indictment with the offenses of murder, armed violence, and unlawful restraint. However, on November 12, 1981, December 10, 1981, January 26, 1982, and November 21, 1983, Robert was repeatedly found unfit to stand trial. On January 7, 1985, and August 26, 1985, Robert was finally found fit to stand trial.

In November of 1985, the cause proceeded to a bench trial at which time Robert presented an insanity defense.

The defendant's mother, Jean Koch, testified on behalf of the State. Her testimony essentially showed that defendant shot and killed his father, attempted to have sex with his mother, and then forced his mother to drive with him to Vail, Iowa, so that he could see his two children who were living with his estranged wife.

Jean testified that shortly after she and the defendant's father, Eugene Koch (Eugene), returned home from a shopping trip, the defendant displayed a shotgun and ordered them downstairs to the recreation room. Defendant indicated that he wished to see his wife and children in Iowa. He also expressed concern that his parents would prevent him from going to Iowa. Seven to ten days earlier, Jean had called the authorities in Iowa and prevented the defendant from seeing his wife.

The shotgun had a hair trigger and defendant did not put the safety on. After about two hours, Eugene, who was diabetic, said he was having an insulin attack and "jumped up" from his chair. Defendant fired the gun "instantaneously" and Eugene fell back with a chest wound. Defendant started to cry a little and told her that he killed his dad and that he loved his dad. He also stated that his wife made him do it.

Defendant then turned the gun toward his mother. After she pleaded for her life, defendant lowered the gun. Jean requested that defendant call the police, but defendant refused, saying that his father was dead. Defendant told his mother to go upstairs to a bedroom. He had her lie down and tied her hands behind her back. Defendant went back downstairs and attempted to hide his father's body in the crawl space inside a closet.

Thereafter, defendant went back upstairs and told his mother he wanted to have sex with her. Defendant undressed himself and his mother. He fondled his mother and unsuccessfully attempted to have intercourse with her. Defendant then took an ice pick, and appeared as though he was going to stab himself. He sat naked in a chair, rolling his head and eyes, and moaning.

After it became dark outside, defendant got dressed and told his mother that they were going to Vail, Iowa, to see his children. Defendant placed his mother (who was still tied up) in the family car, covered her with a blanket and then drove from Palatine to Vail, Iowa, approximately a seven-hour car ride. Defendant pulled into a farmer's field and left his mother in the car promising to return later. Defendant took the shotgun with him. Jean was ultimately able to free herself and get help. She warned the Iowa police about her son, who was subsequently apprehended in Vail, Iowa.

Dr. Edward Blumstein, a clinical psychologist, and Dr. Jerome

Katz, a psychiatrist, both testified that at the time of the offense the defendant was insane. Dr. Blumstein examined defendant eight times over a period of four years and he diagnosed defendant as a schizophrenic, paranoid type. Defendant had a long and extensive history of psychological disturbances and psychiatric hospitalizations dating back to his early childhood. At the time of the incident, he believed that the defendant was unable to conform his conduct to the requirements of the law because he was delusional and psychotic.

Dr. Katz also diagnosed defendant as suffering from schizophrenia. He felt defendant could not appreciate the criminality of his conduct and could not conform his conduct to the laws.

In rebuttal the State presented three expert witnesses, Dr. Phillip Pugh, Dr. Gilbert Bogen, and Dr. Albert Stipes, who each testified that defendant had been sane at the time of the offense, *i.e.*, that defendant understood the criminality of his conduct and was able to conform his conduct to the law.

Robert was found guilty of murder, armed violence and unlawful restraint. He was sentenced to 35 years' imprisonment for murder, 30 years' imprisonment for armed violence and 3 years' imprisonment for unlawful restraint.

Defendant presents the following six issues for review: (1)(a) whether Robert was denied his constitutional right to due process and the effective assistance of counsel where his appellate counsel failed to diligently prosecute his appeal, thereby resulting in the outright dismissal of Robert's appeal, and (b) whether the trial court erred in denying Robert's petition for post-conviction relief; (2) whether the evidence was insufficient to prove defendant sane beyond a reasonable doubt; (3) whether defendant's murder convictions should be reduced to involuntary manslaughter; (4) whether defendant should have been found guilty but mentally ill; (5) whether defendant's conviction for armed violence must be vacated where he was convicted of both armed violence and the underlying felony of murder, which served as the predicate for the armed violence conviction; and (6) whether defendant's sentence was excessive and should be reduced. Defendant argues that he was denied his constitutional right to due process and the effective assistance of counsel where his appellate counsel failed to diligently prosecute his appeal, thereby resulting in the outright dismissal of defendant's appeal. Accordingly, defendant maintains the trial court erred in denying his petition for post-conviction relief.

■ The Post-Conviction Hearing Act provides an offender with the opportunity to challenge his conviction and sentence for violations of Federal and State constitutional rights. (Ill. Rev. Stat.

1991, ch. 38, pars. 122—1 through 122—7.) A post-conviction proceeding is a collateral proceeding, not an appeal from the underlying conviction. (*People v. Free* (1988), 122 Ill. 2d 367, 377, 522 N.E.2d 1184.) "The function of a post-conviction proceeding is not to relitigate the defendant's guilt or innocence but to determine whether he was denied constitutional rights. [Citation.]" *People v. Shaw* (1971), 49 Ill. 2d 309, 311, 273 N.E.2d 816.

After the finding of guilty, a notice of appeal was filed on January 29, 1986, and the Cook County public defender's office was appointed to represent Robert. On June 13, 1986, the appeal was dismissed for want of prosecution. On July 8, 1986, the public defender filed a motion to reinstate Robert's appeal, which was allowed on July 22, 1986.

On March 27, 1987, the appeal was again dismissed for want of prosecution. On June 14, 1991, the public defender filed another motion to reinstate the appeal. The motion was denied on June 26, 1991. The public defender filed a third motion to reinstate the appeal on July 13, 1991. The motion was again denied.

On July 26, 1991, the public defender filed a motion for a supervisory order in the Illinois Supreme Court, asking the supreme court to direct the appellate court to reinstate Robert's appeal. Said motion was denied on August 2, 1991.

On September 12, 1991, Robert filed a petition for post-conviction relief in the trial court, alleging that he had been denied his constitutional right to the effective assistance of counsel and due process where his appeal had been dismissed because of his counsel's failure to diligently prosecute his appeal. Defendant argued that he was thus entitled to a full and complete review of his conviction. This petition was denied on October 10, 1991. However, the court indicated it would allow defendant, with the help of counsel, to amend his petition if he set out facts showing how his constitutional rights were violated in his original trial. The trial judge would not hear any issue regarding what happened on appeal or ineffective assistance of counsel.

■ Defendant argues that based on the above factors it can be seen that he was denied the effective assistance of counsel on appeal and that his appeal was dismissed through no fault of his own. Although defendant maintains the trial court should have considered the merits of defendant's petition, defendant asserts it would be a waste of judicial resources to remand the case and instead requests this court address the substantive issues raised in his appeal.

In *People v. Moore* (1990), 133 Ill. 2d 331, 549 N.E.2d 1257, the Illinois Supreme Court ordered reinstatement of a direct appeal after the appeal had been dismissed for want of prosecution due to

appellate counsel's failure to comply with appellate rules. Although the court ordered reinstatement of the direct appeal in *Moore*, the court noted that *Evitts v. Lucey* (1985), 469 U.S. 387, 83 L. Ed. 2d 821, 105 S. Ct. 830, and the cases cited therein collectively indicate that either a motion to reinstate an appeal, addressed to the appellate court, or a post-conviction attack, addressed in the first instance to the trial court, can be utilized to obtain relief where a direct appeal had been dismissed due to the neglect of defendant's attorney. (*Moore*, 133 Ill. 2d at 339, 549 N.E.2d at 1260.) The court further noted that it had, depending on the facts of each case, specified either a motion in the appellate court to reinstate the appeal or a post-conviction attack in the circuit court as an appropriate remedy for loss of the right to appeal. (*Moore*, 133 Ill. 2d at 339, 549 N.E.2d at 1260.) The court stated:

"[I]t would appear that a criminal defendant must at some point be afforded the equivalent of direct review and an appellate advocate; a court cannot deny a defendant an attorney-assisted appeal by examining the record and determining that defendant would not have succeeded on appeal in any event. [Citation.] *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, cannot be applied where a defendant is effectively denied appellate counsel; in such an instance prejudice is presumed to have resulted. [Citation.] Although a post-conviction proceeding can, and should, be utilized in certain circumstances as a remedy for a lost right of appeal, where it is used, no showing of prejudice is required where counsel failed to perfect defendant's appeal. Prejudice is presumed." *Moore*, 133 Ill. 2d at 339, 549 N.E.2d at 1261.

The State argues that the trial court properly dismissed defendant's petition because it failed to satisfy both prongs of the *Strickland* test. However, as stated in *Moore*, the *Strickland* test cannot be effectively used where defendant is effectively denied appellate counsel.[1]

The State also argues that defendant is precluded from raising any substantive issues which could have been raised in his direct appeal because he failed to raise them below in his petition for post-

---

[1]*Moore* was decided in 1990. The State argues that since the Illinois Supreme Court did not apply *Moore* to this case in August of 1991 when it denied defendant's request for a supervisory order which sought to reinstate the direct appeal, the supreme court's action here denies the defendant the relief sought by the defendant in *Moore*. We believe that the supreme court's actions do not preclude the defendant from bringing a post-conviction petition.

conviction relief. The State further argues that since defendant is appealing from the denial of a petition for post-conviction relief, he cannot ask this court to have his appeal reinstated.

The trial court specifically stated that it would not consider any of defendant's claims which related to his direct appeal. The prayer for relief in defendant's post-conviction petition requested that since the forfeiture of defendant's right to appellate review was attributable to the ineffective assistance of appellate counsel, defendant be allowed to appeal his conviction.

We find that the trial court improperly dismissed defendant's post-conviction petition. Based on *People v. Moore* (1990), 133 Ill. 2d 331, 549 N.E.2d 1257, we remand the matter to the trial court to address the substantive issues raised by Koch's post-conviction petition. Accordingly, we do not comment on the merit, if any, of the remaining issues Koch raises on appeal.

Reversed and remanded.

GORDON and McNULTY, JJ., concur.