# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Peterson*, 2012 IL App (3d) 100514-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DREW PETERSON, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-10-0514 |
| Filed | April 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a murder prosecution, the trial court's denial of the State's motion *in limine* to admit eight hearsay statements made by defendant's deceased wives under the common law doctrine of forfeiture by wrongdoing was reversed, since the trial court's decision that the statutory rule of evidence in section 115-10.6 of the Code of Criminal Procedure, which requires that such statements be found trustworthy and reliable, supplanted the common law doctrine was manifestly erroneous and the trial court's findings that the State proved by a preponderance of the evidence that defendant murdered his wives with the intent to make them unavailable as witnesses made the statements admissible under Illinois Rule of Evidence 804(b)(5), which codified the common law doctrine and did not require a finding that the statements were trustworthy and reliable. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 09-CF-1048; the Hon. Stephen D. White, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | James Glasgow (argued), State's Attorney, of Joliet (Colleen M. Griffin (argued), Assistant State's Attorney, of counsel), for the People. |
| | |
| | Steven A. Greenberg (argued), of Steven A. Greenberg, Ltd., Joel A. Brodsky, Ralph E. Meczyk, Darryl Goldberg, Joseph R. Lopez, and Lisa M. Lopez, all of Chicago, for appellee. |

| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Presiding Justice Schmidt concurred in the judgment and opinion.<br>Justice Carter specially concurred, with opinion. |

**OPINION**

¶ 1      The defendant, Drew Peterson, was charged with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2004)) in connection with the death of Kathleen Savio. During pretrial matters, the circuit court issued several rulings on the admissibility of evidence the State intended to present at trial. The State filed five appeals from these rulings–Nos. 3-10-0513, 3-10-0514, 3-10-0515, 3-10-0546, and 3-10-0550, which this court consolidated.

¶ 2      In one of these appeals, No. 3-10-0514, the State argued that the circuit court erred when it denied the State's motion *in limine* to admit certain hearsay statements under the common law doctrine of forfeiture by wrongdoing. A divided panel of this court held, *inter alia*, that we lacked jurisdiction to hear that appeal because it was untimely. *People v. Peterson*, 2011 IL App (3d) 100513, ¶ 75. The State filed a petition for leave to appeal in the Illinois Supreme Court. Our supreme court denied the State's petition. *People v. Peterson*, No. 112875 (Ill. Nov. 30, 2011). However, in the exercise of its supervisory authority, our supreme court directed us to vacate our judgment and to address the State's appeal on the merits, vesting us with jurisdiction[1] over the State's appeal. Upon consideration of the merits

---

[1]As we explained in our initial opinion, the State's interlocutory appeal on the hearsay issue was untimely under Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006) and the *Taylor* rule (*People v. Taylor*, 50 Ill. 2d 136 (1971)), leaving this court with no jurisdiction to address the merits of the State's appeal. See *People v. Holmes*, 235 Ill. 2d 59, 67-68, 72 (2009); *People v. Williams*, 138 Ill. 2d 377, 394 (1990). Thus, we were compelled to dismiss the appeal.

     In the exercise of its supervisory authority, our supreme court has now permitted us to address the merits of the State's appeal. Only the supreme court may do this. "The appellate court's jurisdiction turns on litigants' compliance with [the supreme court's] rules" prescribing the time

of appeal No. 3-10-0514, we reverse the circuit court's judgment and remand for further proceedings.

¶ 3                                         FACTS

¶ 4        On March 1, 2004, Kathleen Savio, the defendant's third wife, was found dead in her bathtub. At the time of her death, the Illinois State Police conducted an investigation into Kathleen's death and a pathologist performed an autopsy. The pathologist concluded that Kathleen had drowned but did not opine on the manner of death. A coroner's jury subsequently determined that the cause of death was accidental drowning. No charges were filed in connection with her death.

¶ 5        Several months before Kathleen's death, the judge presiding over divorce proceedings between Kathleen and the defendant entered a bifurcated judgment for dissolution of their marriage. The court's judgment reserved issues related to matters such as property distribution, pension, and support. A hearing on those issues had been scheduled for April 2004.

¶ 6        The defendant's fourth wife, Stacy Peterson, disappeared on October 27, 2007. Stacy and the defendant had been discussing a divorce. Following Stacy's disappearance, Kathleen's body was exhumed and two additional autopsies were conducted. The pathologists who conducted the autopsies concluded that Kathleen's death was a homicide.

¶ 7        On May 7, 2009, the State charged the defendant with the murder of Kathleen. During pretrial proceedings, the defendant contested the admissibility of some of the evidence the State intended to present at trial. At issue in this appeal are the court's rulings that pertained to the State's motions *in limine* to admit certain hearsay statements allegedly made by Kathleen and Stacy.

¶ 8        On January 4, 2010, the State filed a motion *in limine* arguing that 11 statements made

---

limits for filing appeals, and an appellate court has no "authority to excuse compliance" with those rules. (Internal quotation marks omitted.) *People v. Lyles*, 217 Ill. 2d 210, 216, 217 (2005). Thus, when an appeal is untimely under a supreme court rule, the appellate court has "no discretion to take any action other than dismissing the appeal." *Id.* at 217. Our supreme court, however, is not constrained by its rules governing appellate jurisdiction. *Id.* The supreme court possesses a "broad" and "unlimited" supervisory authority over the Illinois court system. *Id.*; see also *McDunn v. Williams*, 156 Ill. 2d 288, 302 (1993). This broad authority allows the supreme court to confer jurisdiction on the appellate courts even when the appellant has flouted a jurisdictional deadline prescribed by a supreme court rule. See, *e.g.*, *Lyles*, 217 Ill. 2d at 217 (directing appellate court to reinstate appeal even though the appellate court had "acted entirely correctly" in dismissing the appeal for lack of jurisdiction because the defendant failed to file a timely petition for rehearing after his appeal was dismissed for want of prosecution); *People v. Moore*, 133 Ill. 2d 331, 334 (1990) (reinstating a criminal defendant's direct appeal from his conviction even though nearly 10 years had passed since the appellate court had dismissed the appeal). Because the supreme court's supervisory order did not impact the rulings this court issued in appeal Nos. 3-10-0513, 3-10-0515, 3-10-0546, and 3-10-0550, those rulings stand.

by Kathleen and 3[2] statements made by Stacy were admissible under section 115-10.6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.6 (West 2008) (hearsay exception for the intentional murder of a witness)) and under the common law doctrine of forfeiture by wrongdoing. Section 115-10.6 of the Code provides that "[a] statement is not rendered inadmissible by the hearsay rule if it is offered against a party that has killed the declarant in violation of clauses (a)(1) and (a)(2) of [s]ection 9-1 of the Criminal Code of 1961 intending to procure the unavailability of the declarant as a witness in a criminal or civil proceeding." 725 ILCS 5/115-10.6(a) (West 2008). The statute requires the circuit court to conduct a pretrial hearing to determine the admissibility of any statements offered pursuant to the statute. 725 ILCS 5/115-10.6(e) (West 2008). During the hearing, the proponent of the statement bears the burden of establishing by a preponderance of the evidence: (1) that the adverse party murdered the declarant and that the murder was intended to cause the unavailability of the declarant as a witness; (2) that the time, content, and circumstances of the statements provide "sufficient safeguards of reliability"; and (3) that "the interests of justice will best be served by admission of the statement into evidence." 725 ILCS 5/115-10.6(e) (West 2008). The circuit court must make "specific findings as to each of these criteria on the record" before ruling on the admissibility of the statements at issue. 725 ILCS 5/115-10.6(f) (West 2008). The statute provides that it "in no way precludes or changes the application of the existing common law doctrine of forfeiture by wrongdoing." 725 ILCS 5/115-10.6(g) (West 2008). The common law doctrine of forfeiture by wrongdoing provides a hearsay exception for statements made by an unavailable witness where the defendant intentionally made the witness unavailable in order to prevent her from testifying. *People v. Hanson*, 238 Ill. 2d 74 (2010); *People v. Stechly*, 225 Ill. 2d 246, 272-73 (2007).

¶ 9     The State asked the circuit court to conduct a hearing to determine the admissibility of these hearsay statements under both the statute and the common law doctrine of forfeiture by wrongdoing and sought the admission of the statements under both the statute and the common law. In January and February 2010, the circuit court held an evidentiary hearing on the State's motion. The State argued, *inter alia*, that the defendant killed Kathleen with the intent of preventing her testimony at the hearing on the distribution of the marital property. The State also argued that the defendant killed Stacy with the intent of preventing her testimony not only at a future divorce and property distribution hearing, but also at a trial for Kathleen's murder. Seventy-two witnesses testified at the hearing, including three pathologists. Two pathologists testified for the State that Kathleen's death was a homicide. The defense's pathologist disagreed with the State's pathologist's conclusions and testified that Kathleen had drowned accidentally.

¶ 10     The circuit court took the matter under advisement and issued its written ruling on May 18, 2010. Applying the statutory criteria, the court found that the State had proved by a preponderance of the evidence that: (1) the defendant murdered Kathleen and Stacy; and (2) he did so with the intent to make them unavailable as witnesses. Further, the court found that,

---

[2]The State's motion had included four statements made by Stacy, but the State withdrew one of the statements at the hearing on the State's motion.

pursuant to the statute, 6 of the 14 proffered hearsay statements contained sufficient "safeguards of reliability" and that the interests of justice would be served by the admission of those statements into evidence.[3] However, the circuit court excluded the remaining eight hearsay statements proffered by the State because it found that those statements did not meet the statutory standard of reliability and that the interests of justice would not be served by their admission.[4]

¶ 11    The circuit court's May 18, 2010, order failed to address whether any of the proffered statements were admissible under the common law doctrine of forfeiture by wrongdoing, as the State had requested in its motion. On May 28, 2010, the defendant filed a motion to clarify the circuit court's ruling. The defendant's motion asked the court to clarify whether it ruled under the common law doctrine. During a hearing held the same day, the court stated, "I didn't even get to that. There was no request as to any of the others. I ruled strictly pursuant–there was a hearing pursuant to the statute."

¶ 12    On June 30, 2010, the State filed another motion to admit the hearsay statements in which the State asked the court to reconsider its decision to exclude the statements and again requested the circuit court to rule on the admissibility of the same hearsay statements under the common law doctrine of forfeiture by wrongdoing. The defendant objected that the State's motion to reconsider was untimely because the State did not file the motion within 30 days of the circuit court's May 18 order. At a hearing on July 2, the court stated that it believed section 115-10.6 of the Code codified the common law doctrine and that "[i]f the common law is codified, the codification is what rules." On July 6, the court issued an order denying the State's motion, which it described as a motion to reconsider the May 18 ruling. The court's order did not address the defendant's argument that the State's motion was untimely or provide any specific reasons for its ruling. Two days later, however, the court stated that its ruling was based on its belief that a statute that codifies the common law takes precedence over the common law unless the statute is declared unconstitutional or otherwise invalidated.

¶ 13    The State appealed the circuit court's May 18, 2010, order and its July 6 denial of the State's motion to reconsider that order (No. 3-10-0514). The defendant moved to dismiss the State's appeal as untimely. The defendant argued that the State's appeal was jurisdictionally defective because the State had failed to file either a motion to reconsider or a notice of appeal within 30 days of the circuit court's May 18, 2010, order, as required by Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006) and various supreme court decisions construing that rule, including *People v. Holmes*, 235 Ill. 2d 59, 67-68, 72 (2009). In response, the State filed a motion for leave to file a late notice of appeal under Illinois Supreme Court Rule 606(c) (eff. Mar. 20, 2009). On August 9, 2010, this court allowed a late notice of appeal to be filed and denied as moot the defendant's motion to dismiss the appeal.

---

[3]Two of the statements, which were written, were admitted in redacted form.

[4]Because the circuit court record and the parties' briefs on appeal have been placed under seal, we have chosen not to reveal the content of these statements. We are concerned that public dissemination of these statements could taint the jury pool.

The State also filed interlocutory appeals from several of the circuit court's other pretrial rulings (Nos. 3-10-0513, 3-10-0515, 3-10-0546, and 3-10-0550).

¶ 14    In a consolidated decision, a divided panel of this court dismissed appeal No. 3-10-0514 for lack of jurisdiction and affirmed the circuit court's rulings in the other four appeals. *Peterson*, 2011 IL App (3d) 100513, ¶¶ 75-80. We held that appeal No. 3-10-0514 was untimely under Supreme Court Rule 604(a)(1) and several Illinois Supreme Court decisions interpreting that rule, including *Holmes*, 235 Ill. 2d at 67-68, 72, and *People v. Williams*, 138 Ill. 2d 377, 390-91, 393-94 (1990), leaving this court with no jurisdiction to address the merits of the State's appeal.

¶ 15    The State filed a petition for leave to appeal in the Illinois Supreme Court. Our supreme court denied the State's petition. However, in the exercise of its supervisory authority, our supreme court directed this court to vacate our judgment and to address the State's appeal on the merits.

¶ 16                                    ANALYSIS

¶ 17    The State argues that the circuit court erred when it denied the State's motion *in limine* to admit certain hearsay statements allegedly made by Kathleen and Stacy. Specifically, the State appeals the circuit court's refusal to admit 8 of the 14 hearsay statements proffered by the State under the common law doctrine of forfeiture by wrongdoing.

¶ 18    Because motions *in limine* invoke the circuit court's inherent power to admit or exclude evidence, a court's decision on a motion *in limine* is typically reviewed for an abuse of discretion. *People v. Williams*, 188 Ill. 2d 365, 369 (1999). However, "[w]here a trial court's exercise of discretion has been frustrated by an erroneous rule of law," our review is *de novo*. *Williams*, 188 Ill. 2d at 369.

¶ 19    The circuit court denied the State's motion *in limine* to admit 8 of the 14 hearsay statements under the common law doctrine because it believed that section 115-10.6 of the Code codified, and therefore supplanted, the common law doctrine of forfeiture by wrongdoing. In so ruling, the circuit court erred as a matter of law.

¶ 20    The common law doctrine of forfeiture by wrongdoing was recognized by the United States Supreme Court more than 130 years ago. See *Reynolds v. United States*, 98 U.S. 145, 158 (1878). In 1997, the doctrine was codified at the federal level by Federal Rule of Evidence 804(b)(6) as an exception to the rule against hearsay. Fed. R. Evid. 804(b)(6); *Giles v. California*, 554 U.S. 353, 367 (2008). Federal Rule 804(b)(6) provides a hearsay exception for "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6). The rule does not condition the admissibility of such statements upon a showing that the statements are trustworthy or reliable. Fed. R. Evid. 804(b)(6); *United States v. White*, 116 F.3d 903, 912-13 (D.C. Cir. 1997).[5]

_____

[5]See also, *e.g.*, Anthony Bocchino & David Sonenshein, *Rule 804(b)(6)–The Illegitimate Child of the Failed Liaison Between the Hearsay Rule and Confrontation Clause*, 73 Mo. L. Rev.

¶ 21 In 2007, our supreme court expressly adopted the common law doctrine as the law of Illinois. *People v. Stechly*, 225 Ill. 2d 246, 272-73 (2007). In *Stechly*, our supreme court made clear that, as applied in Illinois, the doctrine was "coextensive with" Federal Rule 804(b)(6). *Stechly*, 225 Ill. 2d at 272-73. Accordingly, in Illinois (as in Fed. R. Evid. 804(b)(6)), the common law rule allows for the admission of qualifying hearsay statements even if there is no showing that such statements are reliable. See *Stechly*, 225 Ill. 2d at 272-73; see also *People v. Hanson*, 238 Ill. 2d 74, 99 (2010) ("so long as the declarant's statements are relevant and otherwise admissible, statements admitted under the forfeiture by wrongdoing doctrine need not reflect additional indicia of reliability"); Michael H. Graham, Graham's Handbook of Illinois Evidence § 804.9, at 998-99 (10th ed. 2010) (noting that *Stechly* did not require a finding of "sufficient safeguards of reliability" with respect to statements admitted under the forfeiture rule); Bocchino & Sonenshein, *supra*, at 81 (noting that *Stechly* adopted the common law doctrine as a hearsay exception in Illinois without requiring a showing of trustworthiness).

¶ 22 In contrast to the forfeiture by wrongdoing doctrine, reliability is an element of the statutory hearsay exception for the intentional murder of a witness, under which the circuit court ruled on May 18, 2010. See 725 ILCS 5/115-10.6(e)(2) (West 2008) (providing that the party seeking the admission of hearsay statements under the statute bears the burden of establishing by a preponderance of the evidence that "the time, content, and circumstances of the statements provide sufficient safeguards of reliability"). Thus, the statute stands in direct conflict with the common law doctrine of forfeiture by wrongdoing in Illinois.

¶ 23 On September 27, 2010, our supreme court adopted the Illinois Rules of Evidence, which became effective in Illinois courts on January 1, 2011. The Illinois Rules of Evidence codified the existing rules of evidence in this state, including the common law doctrine of forfeiture by wrongdoing. Under Rule of Evidence 804(b)(5), a hearsay exception is provided for "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Ill. R. Evid. 804(b)(5) (eff. Jan. 1, 2011). Reliability is not an element of Rule of Evidence 804(b)(5).

¶ 24 As a matter of separation of powers in Illinois, our supreme court has the ultimate authority to determine the manner by which evidence may be introduced into the courts. See *People v. Bond*, 405 Ill. App. 3d 499, 508-09 (2010). Thus, "[w]here a statute conflicts with a [supreme court] rule of evidence or supreme court decision adopting a rule of evidence,

41 (2008) (noting that, unlike the other hearsay exceptions, Rule 804(b)(6) "admits out-of-court statements bearing no indicia of trustworthiness" and "allows for the admission of any relevant statement made by the absent hearsay declarant irrespective of the trustworthiness of that statement"); Kelly Rutan, Comment, *Procuring the Right to an Unfair Trial: Federal Rule of Evidence 804(b)(6) and the Due Process Implications of the Rule's Failure to Require Standards of Reliability for Admissible Evidence*, 56 Am. U. L. Rev. 177, 179 (2006) (noting that "unlike other exceptions to the hearsay rule, the [Federal Advisory] Committee adopted the forfeiture by wrongdoing rule [in Rule 804(b)(6)] without any standards of reliability or particular guarantees of trustworthiness").

courts are to follow the rule or decision." *Id.* at 509; see also Ill. R. Evid. 101 (eff. Jan. 1, 2011) ("A statutory rule of evidence is effective *unless in conflict with a rule or a decision of the Illinois Supreme Court.*" (Emphasis added.)); see generally *People v. Walker*, 119 Ill. 2d 465, 475 (1988) ("where *** a legislative enactment directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority, the rule will prevail"); *People v. Joseph*, 113 Ill. 2d 36, 45 (1986). Accordingly, the conflict between section 115-10.6 of the Code and the forfeiture by wrongdoing rule adopted in *Stechly* and *Hanson* (and codified in Rule of Evidence 804(b)(5)) must be resolved in favor of the pronouncements of our supreme court. In this case, the circuit court believed that the statutory rule of evidence in section 115-10.6 of the Code supplanted the common law doctrine of forfeiture by wrongdoing. As a matter of law, we hold that the court's decision was manifestly erroneous.

¶ 25 While the circuit court's exercise of discretion in excluding the eight hearsay statements was frustrated by a manifestly erroneous rule of law, the court nevertheless made the appropriate and necessary factual findings for the evidence to be admissible under Rule of Evidence 804(b)(5). Specifically, the court found that the State proved by a preponderance of the evidence that: (1) the defendant murdered Kathleen and Stacy; and (2) he did so with the intent to make them unavailable as witnesses. Ill. R. Evid. 804(b)(5); see also *Hanson*, 238 Ill. 2d at 97-99. Thus, we also hold that the eight excluded statements are admissible under Rule of Evidence 804(b)(5).[6]

¶ 26 One further point bears mentioning. The Illinois legislature passed a statute which created a hearsay exception for statements made by a witness whom the defendant killed in order to prevent the witness from testifying in a civil or criminal proceeding. 725 ILCS 5/115-10.6 (West 2008). The statute conditioned the admissibility of such hearsay statements upon a showing that the statements were reliable. 725 ILCS 5/115-10.6(e)(2) (West 2008). However, as noted above, the common law rule of forfeiture by wrongdoing, which existed in Illinois *before* the statute was enacted, already contained a much broader hearsay exception covering the same type of statements. Although the statute applies only when the defendant intentionally murders a witness to prevent her from testifying, the common law rule applies when the defendant intentionally prevents a witness from testifying by *any* wrongful means. See, *e.g.*, *United States v. Scott*, 284 F.3d 758, 763-65 (7th Cir. 2002) (holding that Federal Rule of Evidence 804(b)(6) applies whenever the defendant intentionally procures a witness's unavailability through murder, physical assault, bribery, threats, or any form of witness intimidation or coercion). Moreover, unlike the statute, the long-established common law rule allows for the admission of hearsay statements even if there is no showing that such statements bear any additional indicia of reliability. See *Stechly*, 225 Ill. 2d at 272-73 (recognizing that the common law doctrine is "coextensive with" Federal Rule 804(b)(6), which is a hearsay exception that does not require a showing of reliability as a condition of admissibility); see also *Hanson*, 238 Ill. 2d at 99; Ill. R. Evid. 804(b)(5) (eff. Jan. 1, 2011).

---

[6]We do not mean to suggest, however, that the circuit court is *required* to admit those eight statements during the trial. Rather, we merely hold that the statements are admissible under Rule of Evidence 804(b)(5) and should be admitted under that rule unless the circuit court finds they are otherwise inadmissible.

Accordingly, by passing a narrower, more restrictive statute, the legislature must have intended to afford *greater* protections to criminal defendants than those existing under the common law. Specifically, the legislature must have intended to ensure that an unavailable witness's hearsay testimony would be admitted *only* upon a showing of reliability, even if the circuit court finds by a preponderance of the evidence that the defendant murdered the witness to prevent him from testifying.[7]

¶ 27    However, after the circuit court applied the statute as written and excluded certain hearsay statements because it found them unreliable, the State, apparently changing course, filed this appeal, arguing that the statements are nevertheless admissible under the common law because the common law does not require a showing of reliability.

¶ 28    This change in the State's position is puzzling. If the legislature intended to facilitate the successful prosecution of criminal defendants who intentionally prevent witnesses from testifying (as the statute's legislative history suggests), it is unclear why it passed a statute that imposed restrictions on prosecutors that are not found in the common law.[8] Regardless, after passing a more restrictive statute, one would expect the State either to enforce the statute as written or act to repeal the statute, not urge the courts to ignore it.

¶ 29    Nevertheless, because the statute neither trumps nor supplants the common law, we must reverse the circuit court's judgment.

¶ 30                    CONCLUSION

¶ 31    The judgment of the circuit court of Will County is reversed and the cause is remanded for further proceedings.

¶ 32    Reversed and remanded.

---

[7]The statute's legislative history demonstrates the importance that the statute's sponsors attached to this reliability requirement. The initial bill was amended by the Illinois House of Representatives and Senate to ensure that hearsay testimony could be admitted under the statute only if the circuit court first found the testimony to be reliable. See 95th Ill. Gen. Assem., Senate Proceedings, July 10, 2008, at 57-58; see also 95th Ill. Gen. Assem., Senate Proceedings, Nov. 12, 2008, at 9 (statements of Senator Wilhelmi) (noting that the amended Senate bill included "a very specific test to ensure the reliability and a court would have to rule that that reliability test has been met before the statement would be offered").

In addition, after the statute was passed (but before *Hanson* was decided), the Will County State's Attorney–who during oral argument repeatedly claimed that he "wrote the statute"–told the circuit court that while the common law "does not require that there be any indicia of reliability," "our statute has that [requirement]," which is "another protection built in for the defendant."

[8]We recognize that the statute purports to preserve the common law doctrine. 725 ILCS 5/115-10.6(g) (West 2008) ("This Section in no way precludes or changes the application of the existing common law doctrine of forfeiture by wrongdoing."). However, this could not include the common law doctrine's lack of a reliability requirement because the statute explicitly imposes such a requirement.

¶ 33    JUSTICE CARTER, specially concurring:

¶ 34    I concur with the majority's judgment that reverses the circuit court's ruling, finds the eight excluded statements admissible under Rule of Evidence 804(b)(5), and remands the case for further proceedings. I write separately, however, because I do not join in several aspects of the majority's opinion, two of which I will address.

¶ 35    First, I do not join in the majority's first footnote (*supra* ¶ 2 n.1) in which it presumes that its interpretation of the *Taylor* rule was correct in the majority's previous decision (*Peterson*, 2011 IL App (3d) 100513), and that our supreme court directed this court to vacate our decision in appeal No. 3-10-0514 and to address the appeal on the merits simply because our supreme court can do so. In its supervisory order, our supreme court merely stated the following:

"In the exercise of this Court's supervisory authority, the Appellate Court, Third District, is directed to vacate its judgment in *People v. Peterson*, case No. 3-10-0514, dismissing the appeal for lack of jurisdiction. The Appellate Court is directed to address the appeal on the merits." *People v. Peterson*, No. 112875 (Ill. Nov. 30 2011) (table).

Nothing in these two sentences can be construed as an approval of the majority's interpretation of the *Taylor* rule in its previous decision or, for that matter, as any explanation as to why our supreme court did what it did.

¶ 36    In an attempt to support its interpretation of our supreme court's supervisory order, the majority cites to three cases, none of which in fact support the majority's unsubstantiated assumptions. In all three of those cases, our supreme court provided lengthy explanations as to why it was reinstating appeals or finding jurisdiction. *Lyles*, 217 Ill. 2d at 217-20; *McDunn*, 156 Ill. 2d at 302-04; *Moore*, 133 Ill. 2d at 335-41. We were not given any such explanation. Because we do not know the reason why our supreme court ordered us to vacate our previous decision and address the appeal's merits, I refuse to speculate and do not join in the majority's first footnote.

¶ 37    Second, I do not join in the *dicta* the majority has included in paragraphs 26 through 28 and the accompanying footnote 7, which merely serves as the majority's commentary on the Will County State's Attorney's actions. What the Will County State's Attorney did in this case–and whether those actions were "puzzling" to the majority (*supra* ¶ 28)–is irrelevant to the disposition of this appeal.

¶ 38    We were instructed by our supreme court to address the merits of appeal No. 3-10-0514. Because neither of the two aforementioned matters is necessary to decide the merits of appeal No. 3-10-0514, I refuse to join in those aspects of the majority's opinion.